The Buffalo Loan, Trust and Safe Deposit Company, Respondent, *v.* The Medina Gas and Electric Light Company and The Holland Trust Company, Appellants.

1. Corporations. The title to the property of a company is in the fictitious entity called the corporation, and its officers and agents only have authority to act for it.

2. Corporate Bonds — Unlawful Diversion. The transfer of corporate bonds by the secretary of the corporation to the mortgage trustee, as collateral security for an individual loan to him by the latter, the day after the trustee by its secretary signed the certificates upon the bonds, is an unlawful diversion of the bonds, notwithstanding that the secretary of the mortgagor corporation owned all but two of the shares of the capital stock, where the bonds were issued under a resolution, spread upon the face of the mortgage securing them, providing for the borrowing of money to pay the corporation's existing indebtedness and for other lawful purposes, and authorizing the president to negotiate the bonds.

3. Bona Fide Holder — Inquiry.   A bank which, after levying an attachment on the interest of its debtor in bonds of a corporation of which he was the secretary, and the owner of all but two of its shares of capital stock, at his request, paid his private indebtedness to the trustee in the mortgage securing the bonds, and took a transfer of them from the latter, with which they had been unlawfully pledged as collateral security for the debt, is not bound, in order to acquire the status of a *bona fide* holder, to make any further inquiries after being informed by the secretary of the corporation and the secretary and treasurer of the trustee that the bonds were good and valid securities, notwithstanding that eight coupons, representing past-due semi-annual installments of interest accruing while the bonds were in pledge, were still attached thereto and apparently unpaid, the other stockholders, who were directors, not appearing to have actively participated in the affairs of the corporation.

4. Past-due Interest-Coupons.   Corporate bonds do not stand dishonored upon their face and deprived of their negotiability so as to prevent a transferee from acquiring the status of a *bona fide* holder, because eight coupons representing past-due unpaid installments of interest are attached thereto, notwithstanding that the bonds provide that they shall become due, principal and interest, upon default in payment of any installment of interest for six months after maturity and demand.

5. Transfer after Default in Interest — Demand.   The court will not, in order to deprive one of the status of a *bona fide* holder of corporate bonds, assume that a demand for the payment of past-due interest had been made so as to mature the bonds before the purchase, merely because of the commencement, before that time, of a suit to foreclose the mortgage securing the bonds which, for some undisclosed reason, was discontinued.

*Buffalo Loan, T. & S. D. Co.* v. *Medina Gas & El. L. Co.*, 12 App. Div. 199, affirmed.

(Argued January 30, 1900;  decided February 27, 1900.)

Appeal from a judgment and order of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 30, 1896, modifying and as modified affirming a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Louis Marshall* for appellants. The conclusion of the referee, that the transfer of the bonds by Stranahan to the plaintiff as collateral security for his own debt, was an unauthorized diversion thereof from the purposes for which they were issued, and did not give to the plaintiff title to the same as owner, and the findings of fact upon which that conclusion is based, must be deemed controlling on this appeal. (*S. Nat. Bank* v. *Poucher,* 56 N. Y. 348; *Monnet* v. *Merz,* 127 N. Y. 151; *Cooke* v. *U. Mfg. Co.,* 138 N. Y. 610; *Place* v. *Hayward,* 117 N. Y. 492; *Wangler* v. *Swift,* 90 N. Y. 38.) The mortgage in suit never having been delivered by Mr. Robertson, the president, to the mortgagee, the bonds not having been negotiated by him, and the Medina Gas Light Company never having obtained any of the proceeds thereof or derived any benefit whatsoever therefrom, they never became binding obligations upon it. (*G. S. Bank* v. *Vil. of Suspension Bridge,* 73 Hun, 590; *Shaw* v. *S. H. N. Co.,* 144 N. Y. 220; *Decker* v. *Mathews,* 12 N. Y. 313; *Comstock* v. *Hier,* 73 N. Y. 269; *Farnham* v. *Benedict,* 107 N. Y. 159; *People* v. *A. B. T. Co.,* 117 N. Y. 241; *Fitzgerald* v. *M. P. Ry. Co.,* 45 Fed. Rep. 812; *Parker* v. *B. Co.,* 96 Tenn. 252; *C. T. Co.* v. *Kneeland,* 138 U. S. 414; *T., D. & B. R. R. Co.* v. *Hamilton,* 134 U. S. 296; *Nat., etc., Co.* v. *Kansas City,* 78 Fed Rep. 428.) The plaintiff never acquired the title of *bona fide* holder of the bonds pledged to it by Stranahan. (*Pendleton* v. *Fay,* 2 Paige Ch. 202; *Shaw* v. *Spencer,* 100 Mass. 388; *Garrard* v. *P. & C. R. R. Co.,* 29 Penn. St. 154; *Wilson* v. *M. E. Ry. Co.,* 120 N. Y. 145; 1 Cook on Corp. § 293; *Farrington* v. *S. B. R. Co.,* 150 Mass. 406; *Moores* v. *Citizens' Bank,* 111 U. S. 156; *G., etc., Co.* v. *Boynton,* 71 Fed. Rep. 797; *Bank of N. Y. N. B. Assn.* v. *A. D. & T. Co.,* 143 N. Y. 559; *Duncomb* v. *N. Y., H. & N. R. R. Co.,* 84 N. Y. 191.) The German-American Bank never became the *bona fide* holder of these bonds, but took them after they had matured, and under circumstances which put it upon its inquiry. (*F. Nat. Bank* v. *Green,* 43 N. Y. 298; *Seymour* v. *McKinstry,* 106 N. Y. 230; *Vosburgh* v.

*Diefendorf,* 119 N. Y. 357 ; *C. Nat. Bank* v. *Diefendorf,* 123 N. Y. 191 ; *Newell* v. *Gregg,* 51 Barb. 263 ; *Fisher* v· *Leland,* 4 Cush. 456 ; *Morgan* v. *United States,* 113 U. S. 500 ; *Morss* v. *Gleason,* 64 N. Y. 208 ; *Texas* v. *White,* 7 Wall. 700 ; *Parsons* v. *Jackson,* 99 U. S. 440.)

*Tracy C. Becker* for respondent. The pleadings admit that the issue of the bonds in suit was valid and regular. (*C. S. & A. Assn.* v. *Read,* 93 N. Y. 474 ; *P. Mfg. Co.* v. *J., I. & C. Co.,* 33 Hun, 143 ; *Lloyd* v. *Burns,* 6 J. & S. 423 ; 62 N. Y. 651 ; *Swinburne* v. *Stockwell,* 58 How. Pr. 312 ; *Powers* v. *R., W. & O. R. R. Co.,* 3 Hun, 285 ; *Elton* v. *Markham,* 20 Barb. 343 ; *O'Brien* v. *Catlin,* 1 C. R. [N. S.] 273 ; *Wood* v. *Staniels,* 3 C. R. [N. S.] 152 ; *Conselyea* v. *Swift,* 103 N. Y. 604 ; *Trustees, etc.,* v. *McKechnie,* 90 N. Y. 618.) The judgment below must be affirmed, because the Buffalo Loan, Trust and Safe Deposit Company acquired good title to the bonds in suit when first pledged to it. (L. 1884, ch. 367, § 6 ; *Kent* v. *Q. M. Co.,* 78 N. Y. 185 ; *Welch* v. *I. & T. Nat. Bank,* 122 N. Y. 177 ; Morawetz on Priv. Corp. § 625 ; 4 Thomp. on Corp. § 5285 ; *E. C. Ry. Co.* v. *Hawkes,* 5 H. L. Cas. 331 ; *Mayor, etc.,* v. *M. R. Co.,* 143 N. Y. 26 ; *S. H. B. Co.* v. *E. H. B. M. Co.,* 90 N. Y. 607 ; *Rogers* v. *Pell,* 154 N. Y. 518 ; *R. R. Co.* v. *Howard,* 7 Wall. 393, 415 ; *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 587 ; *Hotel Co.* v. *Wade,* 97 U. S. 13 ; *Pierce* v. *Somerset Ry. Co.,* 171 U. S. 641.) If the plaintiff, when it took the bonds from Stranahan in pledge for his individual debt, was put upon its inquiry because of that fact, the inquiry, if made, would have revealed nothing tending to impugn the validity of the bonds, and the original pledge to the plaintiff was, therefore, valid. (*Cheever* v. *P. R. R. Co.,* 150 N. Y. 59 ; *Titus* v. *G. W. Turnpike Co.,* 61 N. Y. 237 ; *Bank of N. Y. N. B. Assn.* v. *A. D. & T. Co.,* 143 N. Y. 559 ; *Wilson* v. *M. E. Ry. Co.,* 120 N. Y. 145 ; *F. A. Bank* v. *F. S. S. & G. S. F. R. R. Co.,* 137 N. Y. 231 ; *Hanover Bank* v. *A. D. & T. Co.,* 148 N. Y. 612.) Whatever may have been the position of the Buffalo Loan,

Trust and Safe Deposit Company, the German-American Bank, which is the real plaintiff in this case, stands in the position of an absolutely *bona fide* holder of the bonds, and the referee's finding to that effect must stand. ( *White* v. *Benjamin,* 150 N. Y. 258; *People ex rel.* v. *Barker,* 152 N. Y. 417; *Cromwell* v. *Sac County,* 96 U. S. 51; *Nat. Bank* v. *Kirby,* 108 Mass. 497; *Railway Co.* v. *Sprague,* 103 U. S. 756.)

BARTLETT, J.   This action was brought to foreclose a mortgage executed by the Medina Gas Light Company to the plaintiff, the Buffalo Loan, Trust & Safe Deposit Company, as trustee, under date of September 15, 1886.

The action was instituted at the request of the German-American Bank of Buffalo, as alleged owner of ten bonds of a thousand dollars each, secured by the mortgage.

A joint answer was interposed on behalf of the Medina Gas & Electric Light Company and the Holland Trust Company of the city of New York.

The original mortgagor, the Medina Gas Light Company, was duly consolidated in 1891 with the Medina Electric Company and assumed the name of the Medina Gas & Electric Light Company, the new company assuming all of the obligations of the old corporations.   After such consolidation the Medina Gas & Electric Light Company executed a second mortgage to the Holland Trust Company of New York, to secure the sum of $75,000 in bonds.

The contest in this action grows out of the claim made on behalf of the Holland Trust Company that as matter of law its lien is superior to that of the first mortgage.

The capital stock of the Medina Gas & Electric Light Company consisted of 300 shares of the par value of $100 each, and at the time of issuing the first mortgage, and for some years thereafter, one Robert A. Stranahan was the owner of 298 shares; Horace Bacon one share and James Robertson one share; Robertson was the president of the company and Stranahan the secretary, and the three shareholders were the directors.

On the 15th day of September, 1886, at a meeting of the directors, the issuance of the ten bonds and the mortgage securing the same was duly authorized by resolution, which, among other things, provided : " *Resolved*, that the president cause such bonds and mortgage to be prepared in such form and containing such conditions as he shall deem proper, and when prepared he cause the corporate seal to be affixed thereto and execute the same under his hand, attested by the signature of the secretary, and that when the same be so prepared and executed he make delivery of such mortgage and negotiate the said bonds upon the best terms possible."

In pursuance of this resolution, and on the 15th day of September, 1886, the officers of the company duly executed the bonds and mortgage, and on the 20th of September, 1886, the plaintiff, by its secretary, duly signed the mortgage and accepted the trust therein reposed in it. The president and secretary of the mortgagor company did not acknowledge the execution of the mortgage until the 18th of September, 1886.

The bonds are due on the 15th day of September, 1906, with interest at six per centum per annum, payable semi-annually, at the office of the plaintiff on the 15th days of March and September in each year. Coupons were duly attached to each bond representing these interest payments.

The bonds provided that in case default should be made in the payment of any semi-annual installment of interest, and it continued for the period of six months after the interest became due and had been demanded, principal and interest of all the bonds should become due.

On the 21st day of September, 1886, the day following the date that the plaintiff, by its secretary, signed the certificate upon each of the ten bonds, Stranahan pledged to the plaintiff all of the bonds as collateral security for an individual loan of $6,000, made to him by the plaintiff that day. Stranahan was at that time indebted to the plaintiff in the further sum of $6,000, and it held as collateral to that loan stock of the Tonawanda Gas Light Company, which stock was also pledged to the plaintiff for the new loan of $6,000. The

plaintiff afterwards made further loans to Stranahan until his indebtedness amounted to the sum of $14,650.

The findings of the referee are in substance as follows, viz. : The only delivery ever made of said mortgage by the mortgagor to the plaintiff was by Stranahan to Clark, the secretary of the plaintiff, on the day the mortgage was presented to Clark for signature and acceptance of the trust therein contained, and the only delivery of the bonds to the plaintiff was on the same day, by Stranahan, at the time he pledged them to the plaintiff for his individual loan of $6,000. There is no evidence that any of the moneys advanced by the plaintiff to Stranahan was applied by him to any of the purposes recited in the resolution, by virtue of which the mortgage was executed and the bonds issued, and there is no evidence that Stranahan had any power or authority from the Medina Gas Light Company to pledge the bonds for his individual debt; the plaintiff received the same with notice that Stranahan had no such power or authority.

The referee found as a conclusion of law that this transfer of the bonds was an unauthorized diversion from the purposes for which they were issued, and did not give the plaintiff title to the same as against the Medina Gas Light Company.

It will be observed that the plaintiff occupies a dual position in this case, to wit : Trustee under the first mortgage and a holder of the ten bonds as collateral security for the loan made to Stranahan individually.

More than four years later, and on the 27th of December, 1890, Stranahan was indebted to the German-American Bank, doing business in Buffalo, in the sum of $8,000 and interest. On the day last mentioned the German-American Bank commenced an action, by attachment and publication of summons, against Stranahan, and caused the warrant of attachment to be levied upon the interest of Stranahan in 305 shares of the stock of the Tonawanda Gas Light Company and the said $10,000 of bonds of the Medina Gas Light Company then in the possession of the plaintiff.

Almost immediately the German-American Bank discontinued this action, withdrew its attachment and paid to the plaintiff the sum of $14,650, in which sum Stranahan was indebted to it at that time, and received the Tonawanda Gas Light Company stock and the ten bonds of the Medina Gas Light Company, held as collateral for the debt so paid.

At the time the German-American Bank paid this money to the plaintiff, it did so at the request of Stranahan, who was still the owner of 298 shares of the capital stock of the Medina Gas Light Company, and upon his representation and the representation of Charles E. Clark, secretary and treasurer of the plaintiff, that the bonds were good and valid securities.

It further appears that at the time the German-American Bank paid the money to the plaintiff, it had no notice of any irregularity or illegality in the issue of the bonds originally, except such notice as might arise from the fact that all of the coupons which fell due on the 15th of March, 1887, to and including the coupons which fell due on the 15th of September, 1890, were attached to the bonds and apparently unpaid.

The referee also finds in detail the transactions between the German-American Bank and Stranahan and one Linley, who appears to have been associated with him in business early in 1891, and the final result was that after the bank had brought its action in September, 1892, against Stranahan and Linley and sold the collateral security that it held, there was still due to the bank the sum of $16,150.96.

Prior to the commencement of this action the plaintiff was requested by the German-American Bank, of Buffalo, to begin foreclosure of the first mortgage, and such an action was commenced about December 13th, 1889, but subsequently discontinued.

The second mortgage to the Holland Trust Company was executed and delivered in April, 1891.

The referee found as a conclusion of law that the transfer of the ten bonds by the plaintiff to the German-American Bank, and the payment by the bank to plaintiff of Stranahan's indebtedness of $14,650, rendered the bank a *bona fide* pur-

chaser of the bonds and that the plaintiff was entitled to a judgment of foreclosure and sale in the usual form.

As the decision of the Appellate Division was unanimous, the facts as found cannot be reviewed in this court.

While we think this judgment should be affirmed, we are unable to agree with the reasoning in the opinion of the learned Appellate Divison in regard to the original negotiation of the bonds by Stranahan to the plaintiff. We agree with the legal conclusion of the referee that when Stranahan transferred the bonds to the plaintiff as collateral security for his own debt it was an unauthorized diversion of them from the purposes for which they were issued.

The resolution under which the bonds and the mortgage securing them were issued, provides in part as follows : " *Resolved*, That it has become necessary for this company to borrow, and that it will borrow, the sum of ten thousand dollars for the purpose of defraying its existing indebtedness and for its other lawful purposes."

The entire resolution is spread upon the face of the mortgage.

The ink was hardly dry on the signature of the plaintiff accepting the trust contained in the mortgage, when Stranahan, the secretary of the mortgagor, applied for an individual loan on these as yet unissued bonds, as collateral security, and the plaintiff, with full knowledge of the purposes for which the mortgage and the bonds secured by it were issued, granted his request.

The referee, with great forbearance, lightly characterized this transaction as an " unauthorized diversion."

The opinion of the Appellate Division, in referring to the contention that Stranahan was not authorized to negotiate the bonds, uses this language : " This contention is clearly untenable. Stranahan was practically the owner of the entire capital stock of the company, and, if we are to believe the testimony of Curry, the superintendent, the other two directors took no active part in the management or control of its business affairs. * * * The conclusion is fully warranted by

the evidence that Stranahan was lawfully in possession of the bonds and with ample authority to dispose of them."

The learned court then comments upon the reasons of the referee for holding that the plaintiff was not a *bona fide* purchaser of the bonds as to the mortgagor, and that Stranahan had no authority to pledge them for his debt and then continues : " The answer to this reasoning is that Stranahan did, in fact, possess authority from his co-directors and stockholders, who with himself constituted the corporation and owned all its assets, to negotiate the bonds ; consequently, the matter must be judged as though the secretary, instead of the president, were designated in the resolution for such purpose. * * * Clearly the referee's conclusion that the transaction amounted to a diversion of the securities, is founded in error."

In affirming this judgment we dissent from this reasoning. To hold that Stranahan was lawfully in possession of the bonds so that he could pledge them as collateral security for his individual debt with the trustee of the mortgage securing the bonds, because he was "practically the owner of the entire capital stock " of the company, is to confuse the powers of the corporation as a legal entity with the rights of its stockholders.

Stranahan was not acting as secretary of the company in disposing of the bonds, and his ownership of a large portion of the capital stock gave him no power to make a good title to the corporate property.   The title to the property of a company is in the fictitious entity called the corporation, and if all the stock were owned by a single person he could not by his conveyance affect the legal title.   (Morawetz on Corp. § 233.)

The entire management of the affairs of a corporation is delegated by its shareholders to the care of the corporate agents.   Only the regular officers and agents whose appointment was provided for, expressly or impliedly, by the charter, have authority to act for it ; the individual shareholders, as such, have no power either to represent the body corporate, or to bring suit in its behalf, or to interfere in any way with its management.   (Morawetz on Corp. § 238.)

As an officer of the company Stranahan held the bonds to raise money for corporate purposes, and when he used them for his individual benefit he became a naked wrongdoer without title.

The remaining question is whether the German-American Bank became the *bona fide* holder of these ten bonds under the findings of fact to which we have already adverted.

As this finding is brief we quote it in full:   "*Eleventh.* That at the time the said German-American Bank paid said money to the plaintiff, it did so at the request of said Robert A. Stranahan, who was at that time the owner of 298 shares of the capital stock of the Medina Gas Light Company, and upon his representation and upon the representation of Charles E. Clark, the secretary and treasurer of the plaintiff, that the said bonds were good and valid securities."

It was also found that the bank had no notice of any irregularity or illegality in the issue of the bonds, except such notice as might arise from the fact that all of the coupons from March, 1887, to September, 1890, were attached to the bonds and apparently unpaid.

It is undisputed that the bank advanced in good faith to the plaintiff the sum of $14,650, the amount of Stranahan's indebtedness to plaintiff, and took up the collateral security which included these bonds.

It remains to consider whether the bank made proper inquiry as to the bonds being good and valid securities as against the mortgagor; also, the effect of unpaid coupons being attached to the bonds.

It is difficult to see what further inquiry could have been made which would have added anything to the information received from the secretary of the mortgagor and the secretary and treasurer of the trustee corporation, the plaintiff.

The two remaining directors of the mortgagor held only one share of stock each, and do not appear to have actively participated in the affairs of the corporation.

We agree that the duty of making inquiry was fully discharged by the bank.

The next question is whether the eight unpaid interest coupons attached to the bonds caused them to stand dishonored upon their face and to lose their negotiable quality.

We are not aware that any leading case holds this extreme doctrine. The presence of due and unpaid coupons on the bond is sufficient to put the purchaser on inquiry, but they do not of themselves make the bond to which they are attached dishonored paper. (*Railway Co.* v. *Sprague*, 103 U. S. 756; *Cromwell* v. *County of Sac*, 96 U. S. 51.)

It is also to be borne in mind that the bank must have ascertained, when prosecuting its inquiry, that, during the period covered by the unpaid coupons, the bonds had been held in pledge by the plaintiff.

The learned counsel for the defendants insisted upon the argument that the bonds had matured as matter of law.

The bonds, as drawn, do not fall due until 1906, and we find nothing in the record to show that they have become due by reason of non-payment of interest continuing for six months after default and demand.

The appellants' counsel suggest that the suit begun by plaintiff in 1889, to foreclose the first mortgage, is of itself evidence that the bonds were due by reason of six months' continuing default after demand. It appears, however, that this suit was discontinued, but the motive is not disclosed. It may have been for the reason that no demand had been made and the principal was not due. It certainly cannot be assumed without proof that demand had been made so as to authorize the institution of the suit. Furthermore, it is possible that the discontinuance of the action might be regarded as a waiver of the default. It is sufficient answer to this contention of the appellants that no demand is found by the referee prior to the time that the German-American Bank acquired title to these bonds.

We are of opinion that the German-American Bank is a *bona fide* purchaser of the ten bonds before maturing, and took them freed from all infirmities in their origin.

The defendant, the Holland Trust Company, holds its

bonds secured by a mortgage, the lien of which is subject to the first mortgage securing these bonds, duly recorded September 22d, 1886.

The modification by the Appellate Division of the judgment entered upon the referee's report as to interest is not challenged on this appeal.

The judgment and order appealed from should be affirmed, with costs.

PARKER, Ch. J., GRAY, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment and order affirmed.