(91 App. Div. 37.)

## GIVEEN v. GANS et al.

(Supreme Court, Appellate Division, First Department. February 5, 1904.)

1. CORPORATIONS—CONTRACTS—OFFICERS—EMPLOYÉS—SERVICES—VALIDITY.

At the time of the execution of the contract sued on, plaintiff and G. owned all the stock and were officers of defendant corporation, which had no creditors. Plaintiff was employed by the corporation, which was engaged in manufacturing cotton cloth, at a regular yearly salary, and during such employment, but outside of the hours plaintiff was required to devote to defendant's business, he conceived an idea for the manufacture of a peculiar kind of cloth, and rendered services in procuring a contract for a large quantity thereof, which was very profitable. Plaintiff communicated these facts to G., and solicited him to assist in the manufacture and sale of such cloth outside of the corporation, but G. suggested that the cloth be made by the corporation, and agreed that plaintiff should receive one-half of the profits derived therefrom under such contract of sale. *Held*, that the contract to pay plaintiff one-half of such profits was not void as between plaintiff and the corporation under such circumstances by reason of plaintiff's fiduciary obligations as an employé and officer of the corporation.

Appeal from Trial Term, New York County.

Action by John S. Giveen against Levi S. Gans and the Giveen Manufacturing Company. From a judgment in favor of plaintiff, and from an order denying defendants' motion for a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Thomas D. Adams, for appellants.
Charles Strauss, for respondent.

O'BRIEN, J.  The plaintiff sued upon a contract which was made by him and the defendant Gans, under which, it was alleged, the plaintiff was to receive one-half of the profits accruing from the sale of a cotton cloth called "khaki," manufactured by the Giveen Manufacturing Company, and sold by it to a corporation known as the C. Kenyon Company.

There are two crucial questions upon this appeal, the first and more important being as to whether the contract sued upon was valid and enforceable, and, second, if it were, whether, as between the plaintiff and the defendant corporation, it constituted a partnership agreement which covered all the transactions in khaki cloth, in addition to that with the C. Kenyon Company.  It appears that there were profits on the Kenyon contract, and the amount allowed by the jury is not excessive.  It further appears, however, that, upon the other transactions in khaki cloth with other individuals and firms, the Giveen Manufacturing Company made a loss, and the question whether or not the plaintiff as a partner should bear his part of the loss becomes, therefore, important.  We think that the disposition made by the learned trial judge in confining the contract sued upon to the transaction with the Kenyon Company was right, and for the reason that it was the only transaction with which the plaintiff had anything to do; the subsequent transactions with the other firms having all been made after the plaintiff was deprived of his position and no longer connected with the Giveen Company.  The serious question, therefore, is whether the contract sued upon was valid.

At the time of the making of the agreement between the plaintiff and the defendant Gans, the plaintiff was in the receipt of a salary of $4,000 per annum from the defendant Giveen Manufacturing Company, was one of its stockholders, one of its directors, its secretary, and the manager of the manufacturing part of the company.  The defendant Gans was a stockholder, director, and president of the company.  There were two other stockholders named Bache and Von Gerichten.  The preferred stock was $100,000, one half of which was owned by Bache and the other half by the defendant Gans.  The common stock, which was originally $150,000, was afterwards reduced to $1,500, and was owned as follows:  Five shares by defendant Gans, five shares by Bache, three shares by plaintiff, and two shares by Von Gerichten.  In the month of October, 1898, two months before the Kenyon contract was made, the defendant Gans purchased the stock of Bache and had his son elected director in Bache's place, so that at the time of the Kenyon contract Gans owned all the preferred and all the common stock, except three shares of the common stock owned by the plaintiff, and two shares thereof owned by Von Gerichten.  Although the testimony is that Von Gerichten's stock was all purchased by Gans in February, 1898, we are inclined to think that this must be an error in the printed record, for, of course, from the other dates it apparently should be February, 1899.  Whatever the date, however, of the purchase of the two shares of Von Gerichten, it is conceded that when this

suit was brought, other than the stock owned by the plaintiff, the defendant Gans owned all the stock of the company, both preferred and common.

As bearing upon the question of the enforceability of this contract, the ownership of the shares of stock becomes a very important feature of the case, though we have not overlooked the distinction which exists as between the powers of a corporation as a legal entity and the rights of its stockholders, a distinction which was pointed out by the Court of Appeals in Buffalo L., T. & S. D. Co. v. Medina Gas Co., 162 N. Y. 76, 56 N. E. 505. This distinction must always be regarded where a question arises involving the rights of creditors or minority stockholders; but it is not as important in a contest where rights of creditors are not involved, and the dispute is between two stockholders who themselves own all the capital stock. This fact of ownership of all the stock has therefore a bearing upon the rights of the litigants. Here the plaintiff sues upon a contract which was made between himself and the defendant Gans, who between them owned all the capital stock of the corporation; and, as stated, no rights of creditors or other stockholders being involved, it really in substance gets to be a litigation between the plaintiff and the defendant Gans, though in form the suit is brought against the corporation. The only persons interested in the corporation, and that will ultimately be injured or benefited by the success or failure of the plaintiff in sustaining the validity of the contract, will be the plaintiff or the defendant Gans.

Starting with these premises, we are to consider, in addition to the parties by whom it is made, and to whom we have already alluded, what was the nature and purpose of the contract, and what was the effect or result to the Giveen Manufacturing Company, which company the contract by its terms sought to bind. The making of the contract, and the agreement by its terms that the plaintiff was to receive one-half of the profits, as testified to by the plaintiff, were not rebutted by any evidence given for the defendant upon the trial. The plaintiff produced evidence to sustain the allegations of his complaint, which was not rebutted, and which tended to show that about June 1, 1898, he devised a peculiar finish for a cotton cloth called "khaki," which the defendants were willing to use in connection with a contract which they contemplated making with the C. Kenyon Company, and that they agreed with him, for the unusual services (outside of those for which he was paid by his own company) rendered and to be rendered by him in developing the quality and production of the cloth, promoting its sale, and assisting the defendant in securing the Kenyon contract then under consideration, to pay him one-half of all profits accruing from the sale of the khaki as his share in said transactions; that he devoted himself to perfecting it, and labored in promoting the sale, and assisted in making the contract for a large delivery of said material for the corporation known as the C. Kenyon Company; that as the result the Giveen Manufacturing Company manufactured and sold to the Kenyon Company a quantity which realized a total net profit of $23,403.10, one-half of which the plaintiff was entitled to, for which sum he demanded judgment. Upon the trial, as stated, there was no attempt to contradict the plaintiff as to the making of the contract or

its terms, but the defendants attacked the validity of the contract upon the ground that, as the plaintiff was a director of the Giveen Manufacturing Company and one of its managing officers, and was further employed as the manager of its department of manufacture, receiving a yearly salary, and as the business of the company was that of a converter of cotton goods, it was the plaintiff's duty under his employment to devise methods for the finishing and sale of cotton goods, and that he could not claim extra compensation for any services, however unusual, he may have performed in connection with devising a finish for the cloth which was afterwards manufactured and sold as khaki. If it had been shown that there were creditors or other stockholders interested in the company, there would be no doubt but such a contract was void, because it would be seeking a profit for services rendered to the corporation while plaintiff was under a contract to give his entire time and services to the business of the corporation. In addition, plaintiff was an officer and director of this corporation. The Court of Appeals, in Bosworth v. Allen, 168 N. Y. 165, 61 N. E. 165, 55 L. R. A. 751, 85 Am. St. Rep. 667, in speaking of the action of directors, said:

"That principle is that directors of a corporation are charged with the duties of trustees, and bound to care for its property and manage its affairs in good faith, and for a violation of that duty resulting in waste of its assets, injury to its property or unlawful gain to themselves, they are liable to account in equity the same as ordinary trustees. The corporation has a right to call upon them to account, not only for all the property intrusted to their care, but also for all moneys furtively made by them at its expense."

In considering the contract here made, however, notice must be taken of the testimony of the plaintiff that this business of khaki cloth was outside of the regular business of the company, and that plaintiff's purpose originally was to have himself and Gans, as individuals, go into it, and that at one time Gans agreed to supply all the money therefor, but finally it was agreed that the cloth should be manufactured by the company, and that was the form which the transaction finally took, so that in the end the company obtained one-half of the profits which were derived under the Kenyon contract. We assume that one may be connected with a corporation, as manager, director, stockholder, and employé, and yet be at liberty to employ his talents and ability after the hours of the business day, which should be devoted to the business of the company, provided he does not employ them in a way inconsistent with his obligations to or detrimental to the business of the company. What is prohibited is that a director should not occupy an inconsistent position in respect to the duties which he owes to the corporation; nor should he for his own gain or profit make a contract for doing something which, considering his relation to the company, he was bound to do for it; nor should he attempt to sell to it property which he himself owns, and as a director buy the same for the company; nor should he sell the company's property to himself so as to reap therefrom a profit. Nor could the plaintiff during his employment engage in a business on the outside which was similar to or came in competition with the business of the company. It will be noticed, therefore, that the case really turns upon whether or not the plaintiff, upon his hiring with the plaintiff company, was already bound to per-

form the services for which he sues, and as to whether khaki cloth was a product for the manufacture and sale of which the company was organized. These, as we have endeavored to point out, were, we think, questions of fact for the jury. If the jury had found in favor of the corporation upon these questions, then, clearly, the contract would be invalid because without consideration. The question of whether he had faithfully observed the terms of his engagement with the company was called to the attention of the jury, and we must assume from their verdict that they resolved it favorably to the plaintiff.

To summarize, therefore, if there were interests other than those of the plaintiff and the defendant Gans, who own the company, and between whom the contract was made, or had it appeared that dealing in khaki cloth was part of the business of the company, or if the corporation had not ratified the contract under which the plaintiff performed unusual services outside of his contract of employment, not only in devising the peculiar finish for the cotton cloth, but also in arranging the contract with Kenyon Company out of which the profits arose to the corporation, the plaintiff could not legally enforce it against the company. The learned trial judge, however, having presented these questions to the jury, we must from their verdict assume that all of them were resolved favorably to the plaintiff.

The other exceptions relied upon we have examined, and, having concluded that they are without merit, the judgment entered on the verdict and the order appealed from should be affirmed, with costs. All concur.