RALPH S. SWIGGETT and MARY ANNA SWIGGETT, Plaintiffs and Appellees, *v.* SWIGGET, INC., Defendant and Appellant.

No. 7592. Argued January 20, 1939.—Decided June 9, 1939.

*Edmond Block* for appellant; *Dubón & Ochoteco,* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

The plaintiffs filed this suit to recover certain amounts of money which they alleged were loaned by Mary Anna Swiggett to the defendant corporation, Swiggett, Inc. The complaint contains two causes of action. The first alleges that the plaintiffs are husband and wife; that on or about September, 1934, Mary Anna Swiggett loaned the defendant at four different times sums which amounted to $2,500. That for each of said sums the defendant subscribed and delivered to the plaintiff a promissory note payable on sight. That although payment has often been requested said debt has not been paid either in full or in part. The second cause of action alleges that on September 26th, 1934 (probably November) the same plaintiff made a loan to the corporation in the amount of $2,500 by a check for said amount which she received from W. R. Bennett as the purchase price of fifty-one shares that said plaintiff possessed of the capital stock of the defendant corporation. That by agreement of the parties the amount loaned was to be returned as soon as required by the plaintiff, and that although she has tried to collect the same it has not been paid neither totally nor in part.

In answering the first cause of action the defendant admitted the capacity of the parties; denied that in September,

1934 or in any other date the plaintiff had loaned it the amount of $2,500 and denied also having subscribed and delivered the promissory notes described in the first cause of action; it also denied that the amount of said loan had not been paid, or that attempts had been made to collect it as alleged in the complaint.

As special defense, notwithstanding the former allegation, the defendant accepted having subscribed in September, 1934, by its then treasurer, Ralph S. Swiggett, husband of the plaintiff, four promissory notes—stating the dates and value of each—which amount to $2,500; but that said promissory notes having been paid, their holder Mary Anna Swiggett cancelled them and returned them to the defendant. It again denies that payment had been requested.

In answering the second cause of action the defendant denied that the plaintiff loaned it the $2,500 to which said cause of action refers, and as special defense alleged: That or or about September 26, 1934 (probably November) Mary Anna Swiggett delivered to the defendant a check for $2,500. That said check was the amount of the purchase price of fifty shares of the defendant corporation, which W. R. Bennett had bought from the plaintiff. That said sum had been credited to the account of Mrs. Swiggett with the defendant, and that on the same date, November 26, 1934, or on or about that date, the plaintiff herself authorized the defendant corporation to debit or charge to her account the amount of $2,500 because it was the intention of Mary Anna Swiggett to cancel as she cancelled the obligation of returning said amount, said authorization appearing from a letter subscribed by the plaintiff dated November 26th, 1934, addressed to the defendant and copied in the answer. The defendant also denied that it had been requested to pay said amount.

The case went to trial and the court on the merits of the allegations and evidence gave judgment on the complaint in its two causes of action, and as a consequence ordered the

defendant to pay to the plaintiff the amount of $4,577, the total amount of the sums claimed in the two causes of action after deducting the amount of $433 that the plaintiff owed the defendant. It also ordered the defendant to pay legal interest on the $4,577, amount of the judgment, from the date of the filing of the complaint until full payment were made, as well as the costs of the suit without including attorney's fees.

The defendant appealed and in a brief of ninety-one pages alleges that the lower court committed eleven errors, to wit:

"1. The court erred in failing to find and decide that Swiggett Incorporated, during the year 1934, until November 26th of that year was, in contemplation of law, owned only and exclusively by plaintiff Mary Anna Swiggett.

"2. The court erred in holding as a matter of law, that the $2,500 delivered to Swiggett Incorporated in and during September, 1934, constituted a loan.

"3. The court erred in not finding and deciding that on November 26, 1934, and during several months prior thereto, Swiggett Incorporated, was insolvent.

"4. The court erred in finding and deciding that on November 26, 1934, Mary Anna Swiggett loaned to Swiggett Incorporated the sum of $2,500 or any sum whatever.

"5. The trial court held that: 'the evidence discloses no transaction, agreement or part that the parties might have made as to the cancellation of these obligations', and also held: 'The true fact is that the notes were not cancelled for a valuable consideration.' This was error.

"6. The court erred in not holding that the cancellation of November 26, 1934, Exhibit 5, and the endorsements on Exhibit Nos. 1, 2, 3, and 4, were genuine and duly executed.

"7. The court erred in holding that for the endorsements of cancellation appearing in Exhibits 1 to 4 inclusive, even considered as independent contracts, there was no consideration.

"8. The court erred in holding that the cancellations contained in Exhibits Nos. 1 to 5 inclusive, considered as independent transactions, were not valid remissions of debt.

"9. The court erred in awarding costs to plaintiffs.

"10. The Court erred in not holding that plaintiffs are estopped from claiming as due them, or Mrs. Swiggett, the sums set out in the two causes of action or either of them.

"11. The court erred in rendering judgment in favor of plaintiffs."

Most of the errors alleged by the appellant refer to the weighing of the evidence and are so interrelated that if we consider them separately in the order established by the appellant we would incur unnecessary repetitions. We will discuss them together considering separately the two causes of action.

 The object of the first as we have seen, is the collection of $2,500 which Mary Anna Swiggett alleged to have loaned to the defendant corporation on different days in the month of September, 1934, and for which the debtor subscribed and delivered the promissory notes marked Exhibit 1 to 4 inclusive, and which amount to $2,500.

In its amended answer the defendant denied the loan as well as the existence of the promissory notes; but in the next paragraph and under the heading "Special Defenses" it accepted having subscribed and delivered the four promissory notes in question, alleging at the same time that said notes had been paid and that the plaintiff had cancelled and returned them to the defendant.

Mary Anna Swiggett testified that the $2,500 which she loaned to the defendant in September 1934, were obtained by her in a loan that she made from Barbara Swiggett, and that she received said amount through the Royal Bank of Canada. It also appears from the uncontroverted evidence of the plaintiff that the different amounts delivered between the 12th and the 24th of September, 1934, were entered in the account of the defendant in the bank and that they appeared in the bank book which formed part of its system of accounting. If this evidence of the plaintiff had not been true it would have been easy to contradict by the defendant merely by going to the records of the bank. But not only

was this not even attempted, but Mr. Bennett, who may be considered the only prejudiced party in this case, stated in his testimony that the loan of $2,500 was fictitious or simulated (transcript, page 86) although previously (transcript, page 61) he said that the obligation was fictitious. And even though on the reverse of each promissory note Mr. Bennett three months after purchasing the shares and with the express consent of Mrs. Swiggett made a typewritten note dated November 26, 1934, stating that said promissory notes had been cancelled as a part of the contract of sale from Mrs. Swiggett of the fifty shares of the corporation, it appears from the evidence that the four promissory notes have not been paid and that the cancellation of said notes cannot be upheld due to the lack of consideration.

Mrs. Swiggett maintains that she has received nothing in payment for said notes and that it is not true that the cancellation of the same was a part of the contract of sale of the fifty shares. Mr. Bennett could not deny the statement of the plaintiff since he himself on various occasions during his testimony stated that the first that he knew of the existence of this debt in favor of the plaintiff was about three months after having purchased the shares. It is clear that in said circumstances the cancellation of said notes could not have been a part of a contract entered into three months before he knew of their existence. This being so, the consideration expressed on the note of cancellation is void unless Mr. Bennett can prove that it was paid on another true and legal consideration. Section 1228 of the Civil Code (1930 ed.).

The defendant is the one who demands the carrying out of the notes of cancellation and it having been proven that the consideration expressed in them is false, it is up to the defendant to prove that there was another true and legal consideration.

To this effect Manresa says:

"If there is a false consideration the proof of the same corresponds to the debtor or one of the reciprocally bound parties who

does not wish to comply with the contract, since the falseness cannot be presumed, *and once this has been shown, it is up to the creditor, that is, the one who demands the carrying out of the contract,* to prove that there was another true and legal consideration." 8 Manresa Código Civil 1907, ed. 1907, pp. 682, 683 (Italics supplied).

The plaintiff in explaining why she signed in blank, as she alleges, the reverse side of said notes, and delivered them to Mr. Bennett, stated that she did so figuring that her husband Ralph S. Swiggett would be left without employment by Mr. Bennett. But it does not appear from the evidence that she made any agreement or contract binding herself to cancel said notes in consideration that Mr. Bennett should keep Mr. Swiggett in his employment. On the contrary, what appears from the testimony of Mr. Bennett himself is that he became indignant upon knowing of the existence of the notes and alleging fraud on the part of the Swiggetts he demanded their cancellation.

The defendant has not shown that any other true and legal consideration exists for the cancellation of the notes which, as we have seen, represent a legitimate debt which if it was not known by Mr. Bennett when he bought the shares in November, 1934, was not due to any contract of concealment on the part of the plaintiffs since the credit appeared clearly in the books of the corporation which Mr. Bennett could and should have examined before carrying out the business.

If in the absence of concealment or fraud one of the contracting parties who could have examined the object of the contract is permitted to rescind said contract when he finds any defect which if he had examined it previously it would have discovered easily, the fulfillment of contract obligations will be at the caprice or will of the party bound.

The defendant alleges that as in the month of September, 1934, the date on which the alleged loan took place, the plaintiff was the owner of ninety-eight of the hundred shares of the defendant corporation the lower court erred in

acknowledging the corporative existence of Swiggett, Inc., and in not holding that Mary Anna Swiggett and Swiggett, Inc., were one and the same person, and that as the existence of debtor and creditor cannot exist in said person, the validity of the credit of $2,500 should not have been upheld.

The general rule is to the effect that the existence of a corporation independently of its shareholders cannot be disregarded. The fiction which acknowledges juridical personality in the corporation independently of its shareholders was made a part of the law for convenience and to promote the aims of justice; but when the corporative existence is used as a means of carrying out a fraud or of undermining the ends of justice, in such cases the courts should leave the fiction to one side and refuse the corporation a personality distinct from that of their shareholders. The mere fact that a natural person holds all the shares of a corporation does not authorize the courts to ignore the existence of the latter as a juridical entity distinct from the natural person owner of its shares.

From a monography on this matter in 1 A.L.R. 610, 611, we take the following:

"The next case illustrates the importance of the rule that corporate existence is not to be disregarded. In *Buffalo Loan, Trust, & S. D. Co.* v. *Medina Gas & E. L. Co.* (1896) 12 App. Div. 199, 42 N. Y. Supp. 781, the appellate division said, in a case where the owner of practically all the capital stock of a corporation had negotiated its bonds: 'In view of the fact that Stranahan was practically the owner of the entire capital stock, and the corporation was virtually his private property, and in the light of all the circumstances disclosed in respect to his transactions, the court must not carry too far the legal conception that a corporation is to be regarded as a legal entity, existing separate and apart from the natural persons composing it. "The statement that a corporation is an artificial person or entity, apart from its members, is merely a description in figurative language of a corporation viewed as a collective body; a corporation is really an association of persons, and no judicial dictum or legislative enactment can alter this fact." Morawetz

Priv. Corp. § 227. So that the idea that a corporation may be a separate entity, in the sense that it can act independently of the natural persons composing it, or abstain from acting, where it is their will that it shall, has no foundation in reason or authority, and is contrary to the fact. *State ex rel, Watson* v. *Standard Oil Co.* (1892) 49 Ohio St. 137, 177, 15 L.R.A. 145, 34 Am. St. Rep. 541, 30 N. E. 279.' But the court of appeals, while affirming the judgment on another ground in (1900) 162 N. Y. 67, 56 N. E. 505, said: 'To hold that Stranahan was lawfully in possession of the bonds, so that he could pledge them, as collateral security for his individual debt, with the trustee of the mortgage securing the bonds, because he was ''practically the owner of the entire capital stock'' of the company, is to confuse the powers of the corporation as a legal entity with the rights of its stockholders. Stranahan was not acting as secretary of the company in disposing of the bonds, and his ownership of a large portion of the capital stock gave him no power to make a good title to the corporate property. The title to the property of a company is in the fictitious entity called the ''corporation'' and if all the stock were owned by a single person, he could not, by his conveyance, affect the legal title. Morawetz, Priv. Corp. § 233. The entire management of the affairs of a corporation is delegated. by its shareholders to the care of a corporate agent. Only the regular officers and agents whose appointment was provided for expressly or impliedly, by the charter, have authority to act for it. The individual shareholders, as such, have no power either to represent the body corporate, or to bring suit in its behalf, or to interfere in any way with its management. Morawetz, Priv. Corp. § 238. As an officer of the company, Stranahan held the bonds to raise money for corporate purposes, and when he used them for his individual benefit he became a naked wrongdoer without title.' ''

In another monography on the same subject matter which appears in 34 A.L.R. 597, supplementing the aforesaid, the case of *Minifie* v. *Rowley*, (1921) 187 Cal. 481, 202 Pac. 673, is cited, where it was said:

''Before the acts and obligations of a corporation can be legally recognized as those of a particular person, and *vice versa*, the following combination of circumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corpora-

tion has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote an injustice.''

In the present case we could admit for purposes of the discussion that the first of the two circumstances stated by the Supreme Court of California exists, since it is an uncontroverted fact that in September, 1934 Mary Anna Swiggett was the owner of 98 per cent of the shares of the corporation and was its President; but there is not the slightest indication in the proof to the effect that the loan was simulated nor are the circumstances of the case such that in sustaining the right of the complainant to its return we would be sanctioning a fraud or committing an injustice.

In our opinion, the lower court did not commit any error whatsoever in giving judgment for the complainant on the first cause of action.

Let us now turn to the second.

The evidence shows that on or about the year 1934 the commercial life of the defendant corporation progressed very languidly ofter meeting economic difficulties in the payment of its current accounts. It was due to this that in the month of September Mrs. Swiggett had to go to Bárbara Swiggett to make the loan to which the first cause of action refers and that in prior occasions she had done the same appealing for the same purpose to Mr. Bennett, an old friend of the Swiggett family. It was as a result of one of these difficulties that in the month of November, 1934 Messrs. Swiggett requested a loan from Mr. Bennett who did not consider his money sufficiently guaranteed by the manner in which Mr. Swiggett administered the corporation, told them that he would not make the loan unless he had control of the corporation, and this was where he got the idea of acquiring the majority of the shares buying from Mrs. Swiggett 50 or 51 of the 98 that she owned. He bought said shares for the amount of $2,500. According to Mr.

Bennett, as we have stated before, it was a condition of the contract that when Mrs. Swiggett received the price of the shares sold she would enter it in the corporation as a property of the latter to meet certain current debts.

According to Mrs. Swiggett's version it was agreed by the parties that she would turn these $2,500 over to the corporation but only as a loan.

Of course, if the preponderance of the evidence shows that the version of Mrs. Swiggett is the truth, that is to say, that she should deliver and that in fact she did delivered the $2,500 to the corporation as a loan, then the judgment in regard to the second cause of action should be affirmed.

If on the other hand Mr. Bennett's version was what was agreed upon by the parties and the contract was based on a legal cause, in such case the judgment appealed from, in regard to the second cause of action, is erroneous and should be reversed.

At first sight it appears logically and just that Mrs. Swiggett being the owner of the shares after selling a number of them to Mr. Bennett their purchase price should be loaned to the vendor and not to a different entity such as is the defendant corporation. But in this case certain circumstances exist which weighs the balance of the evidence in favor of Mr. Bennett. We know of the economic situation which the corporation was going thru when Mr. Bennet bought the shares in the month of November, 1934. The economic situation of the company was such that its shares the nominal value of which was $100 each were worth so little that Mr. Bennet tried to prove that they were worth $9 each. The complainants took exception to this evidence and were upheld by the court; and even the complainants themselves in their evidence of rebuttal called Mr. Swiggett to the witness stand in order to prove that the shares in November, 1934 were worth $45 each, or that is 45 per cent of the price that Mr. Bennett had paid for them, so that when Mrs. Swiggett sold the 50 shares to Bennett and the

amount came to augment the capital of the corporation, the 48 shares which she still had were worth considerably more. At the same time a person took an interest in the corporation who due to his economic position could help it in the difficulties which frequently presented themselves. But besides these considerations there is another which argues strong in favor of Bennett's version and it is that on the same day November 26, the day on which the sale of the shares took place, Mrs. Swiggett wrote the following letter to the defendant:

"Swiggett, Inc.,
"San Juan, Puerto Rico.

"Sirs:

"I have today delivered you a check for $2,500 which are received from W. R. Bennett in payment of 50 shares of that corporation. You have credited said amount to my account. The object of this letter is to authorize and order you to debit said sum to any account, it being my wish to cancel as by the present I do cancel said obligation.

Respectfully,

(S) Mary Anna Swiggett."

(Defendant's Exhibit 5.)

This letter was presented in evidence by the defendant without any objection on the part of the complainants who admitted the authenticity of the signature of Mary Anna Swiggett who appears signing it. This letter does not harmonize with Mrs. Swiggett's version, and we have search the record in vain trying to find an explanation of the motive or cause which may have led her to write it. We can only explain it by accepting Mr. Bennett's version as true, since if the $2,500 were given to the corporation as a loan, as Mrs. Swiggett alleges, this letter would have undoubtedly not been written.

The preponderance of the evidence tends to show that Bennett's version is the correct one, that is to say, that it was agreed between the parties that the price of 50 shares

bought from Mrs. Swiggett would go to form a part of the funds of the corporation as capital exclusively belonging to said juridical entity. The question which now arises is the following: Was there consideration for this contract? In this respect it should be remembered that when this contract was entered into the economic situation of the corporation was extremely precarious, to such an extent that frequently it did not have money to pay its current accounts, cash being some times lacking to pay for goods received from the United States by express. Mrs. Swiggett herself some time before had to ask Barbara Swiggett to lend her the $2,500 of the first cause of action to pay the accounts of the business. If the business conditions of the corporation should have continued in this manner what else could have been expected, disaster or bankruptcy? It was under these precarious circumstances that Bennett's $2,500 came to feed, to give life to the corporation which having already exhausted its economic, threatened to topple over, perhaps never to raise again. Was not the entry of this money in the treasury of the corporation sufficient consideration for the sale by Mrs. Swiggett of half of her shares in order to save the other half which she kept? Mrs. Swiggett in making this contract received a benefit. The service given by Bennett whether large or small, in Civil Law as well as in Common Law constitutes a good and sufficient consideration to uphold the validity of the contract. Section 1226, Civil Code, 1930 ed. In carrying out this contract was that Mrs. Swiggett wrote the letter of November 26, *supra,* whereby she cancelled the credit of $2,500 object of the second cause of action which credit had been unduly made in her favor in the books of the defendant corporation. To this effect Manresa commenting on the idea of consideration in the Spanish Civil Law, has said:

"That presumption makes it very difficult to allege lack of *consideration* in contracts such as those of sale of barter, which by imposing reciprocal obligations upon the parties, have as a part of themselves sufficient consideration, it being necessary to prove that

no price was paid, or *that nothing was given* in order to find them lacking in consideration." 8 Manresa Código Civil, 1907 ed., page 678. (Italics supplied.)

For a historical and comparative study of "consideration" in the Civil Law and "consideration" in the Common Law, see the article of Professor Corbin of the University of Yale, published in 50 Harvard Law Review 449, entitled "Recent Development in Contracts", and that of Sir William Searle Holdsworth, Professor of Law in the University of Oxford, entitled "The Modern History of the Doctrine of Consideration", published originally in 2 Boston University Law Review, pages 87, 174 and reprinted on page 61 and following of the work entitled "Selected Readings on the Law of Contracts", published under the auspices of The Association of American Law Schools.

From the evidence it does not appear that the capital which Mrs. Swiggett had in the corporation was her private property and not of the conjugal partnership. On the contrary, we must presume that it formed a part of the conjugal partnership, since the complaint was filed in the name of Mary Swiggett and of her husband, Ralph S. Swiggett. If it were her private property, the husband, undoubtedly, would not have been made a party to the suit: Section 54 of the Code of Civil Procedure (1933 ed.).

In view of the foregoing, the judgment appealed from should be affirmed in regard to the first cause of action, reversed in regard to the second cause of action and the defendant, Swiggett, Inc., should be ordered to pay, for the first cause of action to the complainants, the amount of $2,077 principal after deducting the amount of $423 owed to the defendant by Ralph S. Swiggett, husband of the complainant, and legal interest from the date of the filing of the complaint and costs, not including attorney's fees.

Mr. Justice Wolf agrees with the result of this judgment and with part of the opinion in so far as it refers to the

first cause of action and dissents in so far as it refers to the second cause of action.

Mr. Justice Hutchison agrees with the opinion in so far as it affirms the judgment appealed from in regard to the first cause of action and dissents in regard to the reversal of ˎthe second cause of action.