The Rochester Distilling Company, Respondent, *v.* Asa Rasey, Appellant.

A chattel mortgage cannot, as matter of law, be given future effect as a lien upon personal property which at the time of the delivery of the mortgage was not in existence, actually or potentially, when the rights of creditors of the mortgagor have intervened; the mortgage can only operate on property in actual existence at the time of its execution.

While such a mortgage may, as between the parties, be regarded in equity as an executory agreement to give a lien when the property

comes into existence, some further act thereafter is requisite to make it an actual and effectual lien as against creditors.

Crops which are the annual product of labor and of the cultivation of the earth have no actual or potential existence before a planting.

The lessee of certain farm lands executed a chattel mortgage by its terms covering, among other things, all the potatoes and beans "which are now * * * planted or which are hereafter * * * planted during the next year." The greater part of the planting of potatoes and all that of the beans was done after the delivery of the mortgage. After the planting the growing crops were levied upon and sold under an execution against the lessee, and plaintiff became the purchaser. The mortgagor subsequently foreclosed his mortgage and sold said crops to defendant, who took possession. In an action to recover possession, *held*, that the levy by the sheriff operated to transfer to him possession of the crops : that in the absence of proof of any act by the parties to the mortgage to create an actual lien. as against such possession, the equities of the mortgagee were ineffectual for any purpose; and that plaintiff was entitled to the potatoes and beans obtained from the planting done after the execution and delivery of the mortgage.

Reported below, 65 Hun, 512.

(Argued May 4, 1894; decided June 5, 1894.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made October 4, 1892, which reversed a judgment in favor of defendant entered upon a verdict directed by the court and granted a new trial.

In February, 1890, the plaintiff recovered a judgment against one Lovell for $147.44. In April, 1890, Lovell, being the lessee of certain farm lands, in order to secure one Page as an accommodation indorser and for the re payment of money borrowed from him, executed and delivered to him a chattel mortgage; which covered " the grass now growing upon the premises leased etc. ; also all the corn, potatoes, oats and beans, which are now sown or planted, or which are hereafter sown or planted during the next year etc." At the time, but a small part of the land had been planted with potatoes, and the greater part of the planting of potatoes, and all that of the beans, was done in the following month. On July 5th an execution was issued upon plaintiff's judgment, and the sheriff levied upon the growing crops and advertised their sale in August; at which sale plaintiff purchased them. After the

levy by the sheriff, Page, the chattel mortgagee, on July 15th foreclosed under his mortgage, gave notice and sold the growing crops to the defendant. Defendant took possession of the property so purchased and this action was brought to recover its possession. The trial judge, being moved by each of the parties for a verdict in his favor, directed it for the plaintiff as to the beans and for the defendant as to the potatoes and ordered the exception taken to that direction to be heard, in the first instance, at the General Term. That court sustained the plaintiff's exception to the ruling of the trial judge and ordered a new trial; but allowed an appeal to this court, on the ground that a question of law was involved which ought to be reviewed.

*De Merville Page* for appellant. Crops to be raised are exceptions to the general rule, that title to property not in existence cannot be affected so as to vest the title when it comes into being. In the case of crops to be sown, it vests potentially from the time of the executory bargain and actually as soon as the subject arises. (*Andrews* v. *Newcomb,* 32 N. Y. 417–421; *Green* v. *Armstrong,* 1 Den. 550; *Smith* v. *Tabor,* 46 Hun, 316; *Betsinger* v. *Schuyler,* 46 id. 349; *Conderman* v. *Smith,* 41 Barb. 404; *Van Hoozer* v. *Cory,* 34 id. 12; *Mestell* v. *Hewitt,* 19 Abb. [N. C.] 282–286; Smith on Chat. Mort. 8; Thomas on Chat. Mort. § 138; *Shuart* v. *Taylor,* 7 How. Pr. 251; Jones on Chat. Mort. §§ 140, 141; *Galen* v. *Brown,* 22 N. Y. 37; *Van Vechten* v. *McKone,* 52 N. Y. S. R. 622.) If there had been no potential existence of the mortgaged property at the time of the execution of the mortgage, even then the mortgage created a lien in equity, and the power given the mortgagee to take the property and satisfy his debt out of the proceeds of the sale was irrevocable, and the sale by the mortgagee in this case gave a good title to the defendant. (*McCaffrey* v. *Woodin,* 65 N. Y. 459; *Wisner* v. *Ocumpaugh,* 71 id. 116; *Jones* v. *Mayor,* 90 id. 387; Benjamin on Sales, §§ 94, 95; *Coats* v. *Donnell,* 94 N. Y. 168; *Kribbs* v. *Alford,* 120 id. 519; *Seymour* v. *C. R. R.*

*Co.*, 25 Barb. ——; *Fisk* v. *Potter*, 2 Abb. Ct. App. Dec. 145.) In holding that no equitable lien was created in favor of Page, it is claimed that the General Term overlooked the case of *Kribbs* v. *Alford* (120 N. Y. 519–524). The proof was undisputed that over one-half of the potatoes was put in at the time the mortgage was executed, and plaintiff was not entitled to a direction in his favor for that reason, and its exception, therefore, was not well taken, even if the mortgage would not hold the potatoes subsequently put in. (*The Idaho*, 93 U. S. 575; *Moore* v. *E. R. Co.*, 7 Lans. 39; *Nowlen* v. *Colt*, 6 Hill, 461; *Ormes* v. *Dauchy*, 82 N. Y. 443.)

*George D. Reed* for respondent. Defendant to succeed in this action must show the mortgage under which he purchased was a legal, valid lien at a time prior to the sheriff's levy, under which plaintiff purchased. (*F. L. & T. Co.* v. *L. B. Co.*, 27 Hun, 89.) The sheriff having levied upon the property in possession of the judgment debtor, P. P. Lovell, July 5, 1890, took the legal possession at that date, and thereby the property came into the possession of the sheriff, and was to be deemed in the custody of the law until said levy was discharged, vacated or released. (Crocker on Sheriffs, § 436.) Plaintiff became judgment creditor February 13, 1890, and by virtue of an execution, levied upon the property in question July 5, 1890, it then being the property of Philip P. Lovell as alleged in plaintiff's complaint. The defendant does not deny Lovell's title by either a general or specific denial, and it must, therefore, be admitted as true, and judgment cannot be based upon facts to the contrary. (Code Civ. Pro. §§ 500, 522; *Tell* v. *Bryer*, 38 N. Y. 161; *Payne* v. *Willett*, Id. 28 : *Dunham* v. *Cudliff*, 94 id. 1, 134; *Fleishman* v. *Stevens*, 90 id. 110; *White* v. *Smith*, 46 id. 420; *Day* v. *New Lot.* 107 id. 148; *Southwick* v. *F. Nat. Bank*, 61 Hun, 170; *Tisdale* v. *D. & H. C. Co.*, 116 N. Y. 419.) The chattel mortgage under which defendant purchased was void as against attaching creditors of the mortgagor. (*Wood* v. *Lester*, 29 Barb. 151; *Gardner* v. *McEwen*, 19 N. Y. 123; *Otis* v. *Sill*,

8 Barb. 102; *Bank of Lansingburg* v. *Crary*, 1 id. 55; *Blanchard* v. *Cook*, 144 Mass. 222; *R. D. Co.* v. *Razey*, 65 Hun, 514; *Jones* v. *Richards*, 51 Mass. 481; *Page* v. *Larrow*, 51 N. Y. S. R. 35; *Cressey* v. *Sabre*, 17 Hun, 120; *Milliman* v. *Neher*, 20 Barb. 37; Thomas on Chat. Mort. § 141; *Samson* v. *Moffat*, 61 Wis. 153; *F. L. T. Co.* v. *L. B. Co.*, 27 Hun, 90; *Barnard* v. *Eaton*, 56 Mass. 303; *Bennett* v. *Baily*, 150 id. 260; *Griffith* v. *Douglas*, 73 Maine, 532; *Beall* v. *White*, 94 U. S. 382, 387; *Moody* v. *Wright*, 13 Metc. 17, 30; *Williams* v. *Briggs*, 22 Am. Rep. 653; *Coats* v. *Donnell*, 94 N. Y. 177.) Under certain circumstances equity will uphold the transfer of property not in existence or owned by the party at the time of execution of the transfer, and when the property does come into existence, or is purchased by transferrer, the equitable lien attaches at once; but this principle is confined to actions between the original parties. (*Van Hooze* v. *Cory*, 34 Barb. 9, 13; *Conderman* v. *Smith*, 41 id. 404; *Andrew* v. *Newcomb*, 32 N. Y. 417; *McCaffrey* v. *Woodin*, 65 id. 459; *Coats* v. *Donnell*, 94 id. 177; *Reynolds* v. *Ellis*, 103 id. 122; *Wisner* v. *Ocumpaugh*, 71 id. 113; *Smith* v. *Tabor*, 14 N. Y. S. R. 644; Thomas on Chat. Mort. §§ 149, 151; *Bank of Lansingburg* v. *Crary*, 1 Barb. 542, 551; *Milliman* v. *Neher*, 20 id. 37; *Hutchins* v. *Ford*, 9 Bush. [Ky.] 318; *Butt* v. *Ellett*, 19 Wall. 544; *Cole* v. *Kerr*, 19 Neb. 553; *Holroyd* v. *Marshall*, 10 H. L. Cas. 191; Thomas on Chat. Mort. § 141; *Moody* v. *Wright*, 13 Metc. [Mass.] 17, 30; *Barnard* v. *Eaton*, 2 Cush. 294; *Jones* v. *Mayer*, 90 N. Y. 387; *Kribbs* v. *Alford*, 120 id. 519; *Seymour* v. *C. R. R. Co.*, 25 Barb. 284.) In the case at bar the chattel mortgage was given to secure money loaned and for the indorsement of notes. It had nothing to do with the lease of the real estate, and must stand or fall upon the legal rules applicable to chattel mortgages. (*Cressey* v. *Sabre*, 17 Hun, 123; *Milliman* v. *Neher*, 20 Barb. 37; *William* v. *Briggs*, 16 Alb. L. J. 387; *Page* v. *Larrow*, 51 N. Y. S. R. 35; *Otis* v. *Sill*, 8 Barb. 102; *Nestell* v. *Hewitt*, 19 Abb. [N.

C.] 287.)   The sheriff, having levied and taken possession first, obtained legal title.   The mortgagee's title is so purely equitable between the parties that it will not prevail against third parties or execution creditors until he takes actual possession. (Thomas on Chat. Mort. § 141; 1 Pars. on Cont. 523; *Thompson* v. *Van Vechten*, 27 N. Y. 568; *Wiles* v. *Clapp*, 41 Barb. 645.)   It is evident from the way the mortgage was drawn that Page, the mortgagee, knew that the potatoes and beans were not planted at the time of giving the mortgage.   If it should be claimed by the defendant that he bought at least the potatoes that were planted at the time of making the sale, he can take only such title as his vendor Page had.   (Thomas on Chat. Mort. §§ 125, 126.)

Gray, J.   I think this case does not, in principle, differ ·from any other case, where a chattel mortgage has been given upon property in expectancy and which has no potential existence at the time of its execution.   The fact that the subject of the mortgage is a crop to be planted and raised in the future upon land does not affect the determination of this question upon established principles.   It may be that precisely such a case, in its facts, has not been passed upon in this court; but there are expressions of opinion, in several cases of a kindred nature, in the reports of this court and of other courts in this state, which leave us in no doubt as to the doctrine which should govern.   The proposition that a mortgage upon chattels having no actual, nor potential, existence, can operate to charge them with a lien, when they come into existence, as against an attaching, or an execution creditor, has frequently been discountenanced and repudiated.   *Grantham* v. *Hawley* (Hobart, 133) is the general source of authority for the proposition that one may grant what he has only potentially, and there is no good reason for doubting that that which has a potential, or possible existence, like the spontaneous product of the earth, or the increase of that which is in existence, may properly be the subject of sale, or of mortgage. The right to it, when it comes into existence, is regarded as a

present vested right. That which is, however, the annual product of labor and of the cultivation of the earth cannot be said to have either an actual, or a potential existence before a planting.

This action being one at law, the inquiry is limited to ascertaining the strictly legal rights of two contending creditors to the property of their debtor, Powell, in the crops which he had raised. It is unlike some of the cases, which have arisen between the lessor of land and his lessee. In such a case, a different principle might operate to create and support the lien of the landlord upon the crops, as they come into existence upon the land. The title, to the land being in him, an agreement between him and the lessee for a lien upon the crops to be raised, to secure the payment of the rent, would operate and be given legal effect, as a reservation, at the time, of the title to the product of the land. That was the case of *Andrew* v. *Newcomb* (32 N. Y. 417), where the owner of land agreed with another that he might cultivate it at a certain rent; the crop to remain the property of the landlord, until the tenant should give him security for the rent. Judge Denio repudiated the idea that the arrangement could be called a conditional sale of the flax; because the subject was not in existence. He held that the idea of a pledge or of a sale had no application and that the effect of the contract was to give to the landlord the original title to the crop. His remarks upon the subsequent vesting of the title to crops, when they come into being, have reference to such an arrangement between landlord and tenant and not to the case of a mortgage, or conditional sale to some third person of crops yet to be planted. Mr. Thomas, in his work on Chattel Mortgages, upon the subject of mortgaging a crop not yet planted, says (§ 149) " the weight of authority inclines to the view that the lien is an equitable one and differs, in some respects, from the charge created by a mortgage of property in existence at the date of the agreement; " and, again, he says " the authorities are mainly to the effect that such a mortgage conveys no title or interest as against attaching, or judg-

ment creditors of the mortgagor." ˊAbout this question of mortgaging personal property, to be subsequently acquired, much has been written in the books, which I deem unnecessary to resume here at any great length. It results from a review of the authorities that a mortgage cannot be given future effect as a lien upon personal property, which, at the time of its delivery, was not in existence, actually or potentially, when the rights of creditors have intervened. At law such a mortgage must be conceded to be void. The mortgage could have no positive operation to transfer *in præsenti* property not *in esse*. At furthest, it might operate by way of a present contract between the parties that the creditor should have a lien upon the property to be subsequently acquired by his debtor; which equity would enforce as against the latter.

In *Bank of Lansingburgh* v. *Crary* (1 Barb. 542) PAIGE J. observed: "I strongly incline to the opinion that a chattel mortgage can only operate on property in actual existence at the time of its execution; that it cannot be given on the future products of real estate; and that if given one day, or one week, before the product of the land comes into existence, it is as inoperative as if the chattel mortgage had been given on a crop of grass or grain, one, two, or three years previous to its production."

In a subsequent case, the same learned judge considered the nature of a mortgage relating to property not then in existence and its effect as to creditors of the mortgagor. In *Otis* v. *Sill* (8 Barb. 102) the plaintiff claimed under a chattel mortgage, which, after describing the property mortgaged, contained the following clause: "All scythes manufactured out of the said iron and steel and all scythes, iron, steel and coal which may be purchased in lieu of the property aforesaid." Subsequently, the property was taken under executions issued on judgments and the action was brought for its taking and detention. PAIGE, J. refers to his opinion in *Bank of Lansingburgh* v. *Crary*, that a chattel mortgage could only operate on property in actual existence at the time of its execution. He elaborately discusses the ques-

tion of whether such a mortgage was a lien upon the property when acquired, as against the creditors of the mortgagor. and reviews very many authorities in England and some in this country. His conclusions were adverse to the proposition. He held that, as to subsequently acquired property, the mortgage could only be regarded as a mere contract to give a further mortgage upon such property and that no specific lien was created thereby. He says " I have come to the conclusion, as the result of all the authorities, that if the mortgage in this case did amount to a contract to execute a further mortgage on subsequently acquired property, it was good as an executory contract only and did not constitute a lien on the articles of the kind mentioned therein when subsequently purchased." In *Gardner* v. *McEwen* (19 N. Y. 123), the chattel mortgage to the plaintiff, upon property in the store, " or which might thereafter be purchased and put into store," was held inoperative to convey the title to the after-acquired property, as against the defendant ; who purchased it at a sale under execution upon a judgment against the mortgagor. *McCaffrey* v. *Woodin* (65 N. Y. 459) was an action in trover. Plaintiff was lessee and defendant was agent for the lessor. The former covenanted in the lease that the latter should have " a lien as security for the payment of the rent " on all the personal property, etc., which should be put upon the premises, " and such lien to be enforced, on the non-payment of the rent, by the taking and the sale of such property in the same manner as in cases of chattel mortgages on default thereof." By virtue of this provision in the lease, the defendant took the farm produce. The decision upheld the right of the landlord to do so ; holding that as the crops came into existence they vested in the landlord. It is to be noted that the court considered the case as one to be governed by equitable principles ; observing that " the matter comes up solely between the parties, there being no intervening rights of creditors." Referring to *Gardner* v. *McEwen* (*supra*), it was remarked that that " is a case between the mortgagee and creditors and was affected by our act concerning filing chattel mort-

gages." Treating the question as one for the application of equitable principles, it was held that the lessor was entitled to set up her equitable rights, as a defense to the plaintiff's (the lessee's) action of trover. In the same case, Gray C. observed that, if the relation of mortgagor and mortgagee had been created between the parties, "it was inoperative upon any property, which at the time of its execution was not actually, or potentially, either possessed or owned by McCaffrey." In *Cressey* v. *Sabre* (17 Hun, 120), where the opinion was delivered by Boardman, J., and was concurred in by Justices Learned and Bockes, a chattel mortgage upon potatoes (among other articles of property), which were not yet planted, was held inoperative. The distinction was there mentioned between a case like *McCaffrey* v. *Woodin*, where the question of title was between the parties to the contract and one where it arose between the mortgagee and a third person. In *Coats* v. *Donnell* (94 N. Y. 168) Andrews, J. observed that "a contract for a lien on property not *in esse* may be effectual in equity to give a lien as between the parties, when the property comes into existence and where there are no intervening rights of creditors or third persons." *Kribbs* v. *Alford* (120 N. Y. 519) recognizes the invalidity at law of a chattel mortgage of property thereafter to be acquired; but holds that as between the parties their contract would be construed in equity as creating an equitable lien, which could be enforced.

The idea of a chattel mortgage is that of a conveyance of personal property to secure the debt of the mortgagor; which, being conditional at the time, becomes absolute if, at a fixed time, the property is not redeemed and the statute makes it valid, as against creditors of the mortgagor, only when filed as directed. The statute provides for the filing as a substitute for "an immediately delivery," or "an actual and continued change of possession of the things mortgaged." Such provisions seem to me to exclude the idea of a chattel mortgage upon non-existent things; or that such an instrument could operate to defeat the lien of an attaching, or an execution

creditor upon subsequently acquired property. Regarding the chattel mortgage in question as a mere executory agreement to give a lien, when the property came into existence, some further act was necessary, in order to make it an actual and effectual lien as against creditors. But there was no further act by the parties to the instrument, to create such an actual lien and the levy of the execution upon the crops operated to transfer their possession from the owner to that of the sheriff. As against his possession the equities of the mortgagee are unavailing for any purpose. Between the two creditors it is a question of who had gained the legal right to have the crops in satisfaction of his claim and the equitable right of the mortgagee to them, as against his debtor, was defeated by the seizure at the instance of the judgment creditor. We are satisfied as to the correctness of the conclusion reached by the General Term below, that there should have been a direction of a verdict for the plaintiff for the potatoes and beans, obtained from the planting done after the execution and delivery of the mortgage.

The order appealed from should be affirmed and, under the stipulation, judgment absolute should be ordered for the plaintiff, with costs in all the courts.

All concur, except EARL, J., not voting.

Ordered accordingly.