HATCH, J.
—The validity of the mortgage is not cozztrovertéd. But it is claimed that under it no lien was acquired upozi the personal property purchased subsequent to its executiozz as against the petitiozzer herein. That the lien should attach to after-acquired property is withizz the express terms of the zzzortgage, and it is not disputed that such is its effect as between the parties thereto. By the provisions of the statute (Laws 1850, c. 140, sec. 10), azzthority was cozzfez-red to mortgage the corporate property azzd frazzchises for the purpose of coznpletizzg, furnishing, or operatizzg the railrqad; azzd this authority has beezi continued izz the same langzzage zzzider the revisiozz of the railroad law (Laws 1892, c. 676, sec. 4. subd. 10). The statute cozzteznplates that it zzzay be necessary to borrow money for the puz-pose of the physical creation of the road azzd putting it in operatiozz. It is quite evidezzt that izz the accoznplishmezit of this puz-pose pz-operty would be created and acquired that had no actual or potezztial existezzce at the time whezz the loazz was made azzd the zzzortgage given. It is the usual course of procedure in the construction of a railroad that znozzey raised by zzzortgage upon its pz-operty, and that the strzzctzzre is built and opez-ated to a laz-ge extezzt by zzzeazzs of the loans thus obtaizzed, and much of the propez-ty is created and acquired after the loazz is znade. The statute zzzalces no distizzctiozz betweezz property necessary for the completion and fuz-zzishing of the road azzd that which is essezztial to its opez-ation. By the terms of the law, therefore, it was cozzteznplated that for the money thus obtained the.property acqzzired should be pledged as the security for its payzzzent, azzd this cannot be accoznplished without holding that the lien of the mortgage attaches to such property as shall be necessary for that puz-pose, whether izz existence at the tizne whezz the mortgage is givezz or is sizbseqzzently acquired, *499 and whether such property be such as is denominated “real” or “personal.” So it was early held that such a mortgage created, in equity, a lien upon property subsequently acquired superior to the lien of a subsequent incumbrancer by mortgage or judgment. Seymour v. Railroad Co., 25 Barb. 284; Benjamin v. Railroad Co., 49 Barb. 447; Stevens v. Watson 4 Abb. Dec. 302. In those cases the question arose respecting liens upon subsequently acquired real property. But the discussion shows that the court considered the rule applicable as well to personal as to real property. Such has been the uniform rule applied in the federal courts. Mitchell v. Winslow, 2 Story, 630, Fed. Cas. No. 9, 673; Trust Co. v. Kneeland, 138 U. S. 419, 11 Sup. Ct. 357. The difficulties which have arisen relate not so much to the recognition of the mortgage as a lien, for the doctrine of the above cited cases has never been questionéd, but rather to the steps necessary to be taken to evidence the lien. The first debate arose over the question whether the rolling stock and equipment of the road retained its character as personal property, and, if so, was it requisite that it should be filed as a mortgage of chattels. The supreme court divided upon the question and decisions were rendered both ways. The court of appeals in Hoyle v. Railroad Co., 54 N. Y. 314, settled the question by holding that it was personal property, and that the mortgage covering it must be filed as a mortgage of chattels, as prescribed by the act of 1833, or the same would be void as against the general creditors of the corporation. To meet this conclusion, the legislature in 1868 passed an act (Laws 1868, c. 779), providing that it shall not be necessary to file such mortgage as a mortgage of chattels when it covers real and personal property, and is recorded as a mortgage of real estate in each county in or through which the railroad runs. By this act the status of such property, so far as it relates to liens by way of mortgage, is made practically subject to the same rules, and is placed upon the same footing, as real property. The business carried on by railroads, the great extent of territory which they cover, and the fact that the rolling stock is at all times widely distributed, not only throughout the state through which its lines mainly run, but also throughout the different states of the Union, creates an essential difference between it and property whose situs is practically fixed.
This, coupled with the necessity Avhich exists for certainly of security to those advancing money, usually in very large amounts, upon the faith of railroad property, and the prnc0 tical difficulty, if not impossibility, of a railroad being able to realize upon its property in this manner, if the teoh- . nical rules respecting liens upon personal property should *500 oblain, evidently created an intent in the mind of the legislature to make such.property subject to the same rules, so far as practicable, as apply to liens upon real property. It is quite "evident that if it should be held necessary to constantly revise such a mortgage, in order to cover what has been, it may be, purchased by the money advanced or to supply the operating needs, and replenish what is destroyed, it would render such security so doubtful and precarious as not only to impair, but to practically destroy its value. We can see no reason for drawing a distinction in this regard between real and personal property. On the contrary, as the authority for the mortgage of both is derived from the same source, and the same reasons exist why both should be available and answerable as security, we think it more in harmony with the legislative intent to subject it to the same rules. New York Security and Trust Co. v. Saratoga Gas & Electric Light Co., 88 Hun, 569; 68 S. R. 55. This view does not bring us in conflict with Rochester Distilling Co. v. Rasey, 142 N. Y. 570, 60 S. R. 284. That case proceeded upon the well-settled legal rule that a mortgage of chattels having no actual or potential existence when the mortgage was given is void as to intervening creditors. For reasons already stated, that rule has no application to a mortgage of this character.
It follows that the order appealed from should be affirmed, with $10 costs and disbursements.
All concur.