(119 App. Div. 245)

## MEDINA GAS & ELECTRIC LIGHT CO. v. BUFFALO LOAN, TRUST & SAFE DEPOSIT CO.

(Supreme Court, Appellate Division, First Department.   May 24, 1907.)

**1. TROVER AND CONVERSION—WHAT CONSTITUTES.**

Plaintiff corporation executed to defendant, as trustee, a mortgage to secure the payment of certain bonds, depositing the bonds with defendant. Subsequently one of the officers of plaintiff, who owned practically the entire stock of the corporation, agreed with defendant that the bonds in its possession should be pledged to it for his individual indebtedness. *Held*, that the subsequent delivery of the bonds by defendant to another constituted a conversion by defendant of the bonds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trover and Conversion, §§ 84, 86.]

**2. MORTGAGES—PROPERTY COVERED—SUBSEQUENTLY ACQUIRED PROPERTY.**

Plaintiff corporation executed to defendant, as trustee, a mortgage to secure the payment of certain bonds. Thereafter one of the officers of plaintiff, who was practically the owner of the entire stock of the corporation, agreed with defendant that the bonds should be pledged as security for his personal indebtedness to defendant. Defendant thereafter converted the bonds by delivering them to another for a consideration. The mortgage conveyed all the particularly described property of the plaintiff, and also all and singular all the other real estate, "whether the same have been or may be hereafter acquired" by the mortgagor, or "may thereafter be acquired by it," and all other property, real, personal, or mixed, which may have been acquired or may thereafter be acquired, etc. *Held*, that the legal lien created by the mortgage did not cover, so as to convey the same to the purchaser at foreclosure sale, the right of action for the conversion of the bonds, though the mortgagee might have an equitable lien on after-acquired property, which he could enforce by action or by taking possession of the property.

**3. CHATTEL MORTGAGES—AFTER-ACQUIRED PROPERTY.**

At law the right of a mortgagee to have subjected to the lien of his mortgage chattels which shall be acquired by the mortgagor subsequent to the execution of the mortgage depends upon the mortgagee taking possession of the after-acquired property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Chattel Mortgages, §§ 208, 209.]

Laughlin and Scott JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Medina Gas & Electric Light Company against the Buffalo Loan, Trust & Safe Deposit Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Edward W. Hatch, for appellant.

Louis Marshall, for respondent.

INGRAHAM, J. This action, which was commenced on the 14th day of September, 1895, was to recover from the defendant for the conversion of certain bonds by the defendant. The plaintiff made and executed to the defendant, as trustee, a mortgage to secure the payment of 10 bonds of $1,000 each. After this mortgage was executed and recorded, the 10 bonds were, on the 21st day of September, 1886, in the possession of the defendant. On that day one Stranahan, sec-

104 N.Y.S.—40

retary of the mortgagor and the owner of the most of its capital stock, agreed with the defendant that the 10 bonds then in its possession should be pledged as security for his indebtedness to defendant, and the defendant thereupon retained possession of said bonds until on or about the 27th day of December, 1890, when it converted the same by delivering the bonds to the German American Bank of Buffalo, in consideration of the sum of $14,650 paid by the German American Bank to the defendant, and the said bank thereupon became the bona fide owner and holder of said bonds for value before maturity. On the 26th day of August, 1895, the plaintiff demanded of the defendant the said bonds and the coupons thereto attached, or payment to it of the amount due upon the said bonds, and the defendant has refused to comply with the said demand. On the 4th day of February, 1893, the defendant, at the request of the German American Bank, brought an action to foreclose the mortgage. Judgment was finally entered in that action, foreclosing the mortgage and directing a sale of the mortgaged property, which property was sold by the sheriff and a conveyance of the property sold duly executed and delivered to the purchaser.

I agree with Mr. Justice SCOTT that there was no conversion of these 10 bonds and no cause of action existed in favor of the creditor until the transfer of the bonds by the defendant to the German American Bank. Prior to that time the bonds thus in the possession of the defendant had no validity and imposed no obligation upon the obligors. No cause of action existed to enforce the bonds or the mortgage to secure them, as the bonds were not valid and existing obligations of the mortgagor. The agreement between the defendant and Stranahan was not binding on the mortgagor, and created no lien on the bonds, and gave to the defendant no right to retain them. Consequently nothing that the defendant did gave validity to the bonds, or imposed any liability at all upon the mortgagor, or gave the creditor any cause of action against the defendant. The subsequent delivery of the bonds by the defendant to the German American Bank was, however, a conversion by the defendant of the bonds, as by that delivery to the bank the latter became the bona fide holder for value of the bonds and entitled to enforce them against the mortgagor. This was settled by the Court of Appeals on appeal from a judgment in the action to foreclose the mortgage. 162 N. Y. 67, 56 N. E. 505. Upon the delivery of these bonds by the defendant to the bank, therefore, a cause of action arose in favor of the mortgagor, to whose rights the plaintiff has succeeded, for a conversion of the bonds by the defendant; and, as this action was commenced within six years after this act of the defendant which was a conversion of the bonds, it is not barred by the statute of limitations.

The remaining question is whether this cause of action, which thus arose on the 27th day of December, 1890, was included in the property transferred to the defendant as trustee for the benefit of the bondholders, and whether the subsequent sale under the judgment foreclosing the mortgage vested the title to this cause of action in the purchaser, and the plaintiff was thereby divested of such cause of action. The mortgage was dated September 15, 1886, and recited the

execution of ten 6 per cent. bonds, and to secure the payment of the said bonds, "granted, bargained, sold, aliened, remised, released, conveyed, and confirmed" unto the defendant, as trustee, certain real estate in the village of Medina, county of Orleans, in the state of New York, which was particularly described, with all the gasworks, fixtures, pipes, and machinery connected with or pertaining to the gasworks located on said premises, and also all and singular the other real estate of the mortgagor, whether the same have been or are now acquired by the mortgagor, or may thereafter be acquired by it, "and all and singular the scales, tools, machinery, fixtures, implements, and appliances of every nature and description, and all the brands, stamps, trade-marks, and other articles of personal property, now or which shall hereafter be acquired by the party of the first part, and, after default shall be made herein, all and singular the materials manufactured, unmanufactured, or in process of manufacture, bills receivable, debts, demands, dues, choses in action, accounts, and all other property, real, personal, or mixed, which have been acquired or may hereafter be acquired by the party of the first part, with all and singular its rights, privileges, franchises, and all and singular the estate, right, title, interest, property, possession, claims, and demands whatsoever, as well in equity as in law, of the party of the first part, of, in, or to the same, and to every part and parcel thereof, with the appurtenances." This instrument was recorded on the 22d day of September, 1886. The cause of action which is here sought to be enforced arose on the 27th day of December, 1890, by a conversion by the defendant of the very bonds which were secured by the execution and delivery of this mortgage; and on the 4th day of February, 1893, the defendant, as trustee for the German American Bank, who was the holder of these bonds, brought an action to foreclose the mortgage. The complaint in that action, after alleging the execution of the mortgage and the issuing of the bonds, alleges the transfer of the bonds for value by Stranahan to the German American Bank of Buffalo, and the execution of the mortgage, describing the property mortgaged by the same description as is contained in the mortgage. There is no allegation in the complaint that the property sought to be foreclosed included subsequently acquired property. The final judgment directing a foreclosure of that mortgage was entered on June 22, 1895. It directed a sale of the property by the same description as is contained in the mortgage. There was, neither in the report of the referee nor in the judgment, any finding as to subsequently acquired property, or that this cause of action was covered by the mortgage or to be sold under the judgment.

What was enforced in that action was the lien given by the mortgagor upon the specified property described, and the property thus described was sold under the judgment and transferred by the sheriff's deed to the purchaser. The sheriff's deed described by metes and bounds the real property covered by the mortgage, and then purports to convey "all other articles of personal property which then were or should thereafter be acquired by the said Medina Gaslight Company, and, after default should be made in the condition of said mortgage, all and singular the materials manufactured, unmanufactured, or in

process of manufacture, bills receivable, debts, demands, dues, choses in action, accounts, and all other property, real, personal or mixed, which have been acquired or may hereafter be acquired by the said Medina Gaslight Company." The conveyance does not in form purport to convey debts, demands, dues, choses in action, and accounts which had actually accrued to the plaintiff after the execution of the mortgage, and before default had been made in the condition of the mortgage. The cause of action here sought to be enforced was a chose in action which had arisen prior to the default in the condition of the mortgage, and subsequent to the execution and delivery of the mortgage; and therefore there was no lien that attached or could attach on the execution and delivery of the mortgage. The mortgage contained an agreement between the trustees and the mortgagor by which subsequently acquired property should become subject to the mortgage, and this agreement gave an equitable lien upon property which should be subsequently acquired by the mortgagor. By the very form of this instrument it was to act in the future, to take effect after default was made in the condition of the mortgage, and was then to affect the property "which have been acquired or may hereafter be acquired" by the mortgagor. In Deeley v. Dwight, 132 N. Y. 59, 30 N. E. 258, 18 L. R. A. 298, in speaking of a mortgage upon subsequently acquired chattels, it was said:

"The instrument under which the plaintiff claims to recover is in form a chattel mortgage. Gandolfo, who executed it, assumes to transfer the legal title to the machinery to Robert Deeley, the plaintiff's assignor, subject to be defeated upon the payment of $4,700. But, the machinery not having been manufactured, Gandolfo had no title to it, * * * and the instrument did not vest the legal title of the machinery in Deeley, nor did it create a legal lien upon the property described therein. * * * We find no case which holds that the legal title to property not in existence actually or potentially can be transferred either by way of sale or mortgage. That an equitable lien may be created on property to be brought into existence is well settled, and an action to foreclose the lien may be maintained. * * * It [a court of equity] construes the instrument as operating by way of present contract to give a lien, which, as between the parties, takes effect and attaches to the subject of it as soon as it comes into the ownership of the party."

In National Bank of Deposit v. Rogers, 166 N. Y. 380, 59 N. E. 922, the action was brought to have a lien declared upon certain property which the defendant had agreed should be pledged to the plaintiff to secure the payment of a note held by the plaintiff. The action was thus in form to have such a lien declared and enforced, and in such a case the rule is there stated:

"A party cannot mortgage property which he does not have, but he can agree to mortgage it or give a lien upon it as soon as he gets it, and equity will enforce the agreement and establish the lien. * * * So, where the intent is to give a lien, and what is done to that end is too defective to create it, but is consistent with its creation, and not a contract for something else, equity will treat as done what was intended to be done, and the lien may be established and foreclosed in the same action."

That such an equitable lien, which arises from the contract or agreement that a mortgage should attach to subsequently acquired property, is quite distinct from the actual lien that attaches upon the execution and delivery of the mortgage, appears from R. D. Co. v. Rasey, 142

N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635; for it is there express-
ly held that a mortgage upon chattels having no actual or potential
existence cannot operate to charge them with a lien when they come
into existence as against an attaching or execution creditor.   It is there
said:

"It results from a review of the authorities that a mortgage cannot be given
future effect as a lien upon personal property which at the time of its delivery
was not in existence, actually or potentially, when the rights of creditors have
intervened.   The mortgage could have no positive operation to transfer in
præsenti property not in esse.   At furthest, it might operate by way of a pres-
ent contract between the parties that the creditor should have a lien upon the
property to be subsequently acquired by his debtor, which equity would enforce
as against the latter.   *   *   *   Regarding the chattel mortgage in question as
a mere executory agreement to give a lien when the property came into ex-
istence, some further act was necessary, in order to make it an actual and ef-
fectual lien as against creditors.   But there was no further act by the par-
ties to the instrument to create such an actual lien, and the levy of the ex-
ecution upon the crops operated to transfer their possession from the owner to
that of the sheriff.   As against his possession the equities of the mortgages
are unavailing for any purpose."

It has been held that a mortgage of future-acquired property will
be enforced only as a right under a contract and not as a trust at-
tached to the property.   6 Cyc. 1053; Otis v. Sill, 8 Barb. (N. Y.)
103; Wood v. Lester, 29 Barb. (N. Y.) 145–154.   At law the right
of a mortgagee to have subjected to the lien of his mortgage chattels
which shall be acquired by the mortgagor subsequent to the execution
of the mortgage depends upon the mortgagee taking possession of the
chattels after acquired by the mortgagor.   In McCaffrey v. Woodin,
65 N. Y. 459, 22 Am. Rep. 644, Commissioner Dwight, after a re-
view of the authorities, said:

"The general idea running through these cases in a court of law appears to
be that the executory agreement operates as a license, authority, or power,
revocable in its nature, until the creditor is either put into possession of the
goods at the time of or after they come into existence or are vested in the
debtor.   As soon as that new act has intervened, the lien of the creditor be-
comes perfect, and, in the absence of statutory regulation, prevails over the
liens of subsequent executions."

It was, however, also held in that case that the rule in equity is
much less technical and more comprehensive, and approves Holroyd
v. Marshall, 10 House of Lords Cases, 191, when it was held that in
equity the lien of the mortgage attached as soon as the property came
into possession of the mortgagor.   As Lord Chelmsford put it:

"In equity, the estate attaches as soon as the property is acquired by the
debtor.   At law, property not existing, but to be acquired at a future time, is
not assignable.   In equity, it is transferable.   At law, though a power is given
in a deed of assignment to take possession of after-acquired property, no in-
terest is transferred, even as between the parties themselves, unless posses-
sion is actually taken.   In equity, it is not disputed that the moment the prop-
erty comes into possession the deed operates upon it."

In Moody v. Wright, 13 Metc. (Mass.) 17, 46 Am. Dec. 706, speak-
ing of an instrument which assumed to give a lien upon subsequently
acquired personal property which had no existence at the time of the
execution of the mortgage, it was held that neither in a court of law

nor of equity can such security be made effectual by the making and recording of such instrument, without any further act of the parties, with no delivery by the mortgagor, and no act on the part of the mortgagee, taking possession or exercising any rights of property in the newly acquired articles, by virtue of the provisions in the mortgage. This case is clearly against the authorities in this state, in holding that such an instrument did not give an equitable lien. But I think it is an authority for the proposition that to enforce the right of a mortgagee he must either take possession of the specific property or do some act in relation to it to subject the property to the existence of the lien. Such an act would be taking actual physical possession of the property when it is of such a nature that possession can be taken, or by commencing a proceeding in equity to subject the specific property to the lien and to enforce the lien.

In Rochester Distilling Co. v. Rasey, 142 N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635, Judge Gray says:

"Regarding the chattel mortgage in question as a mere executory agreement to give a lien when the property comes into existence, some further act was necessary to make it an actual and effectual lien as to creditors."

It is true that in this case there are no intervening creditors, and the question depends upon the effect of the sale under the judgment of foreclosure; but these authorities all recognize the distinction between the lien created by the mortgage upon existing property and the equitable lien arising from the contract between the parties that the lien of the mortgage shall extend to subsequently acquired property. It seems to me to necessarily follow that, if a mortgagee wishes to enforce his equitable lien against subsequently acquired property, he must either take actual possession of the property or bring his action for that purpose, describing with reasonable certainty the property to which he seeks to have the equitable lien attach or declared and enforced. An action to foreclose the legal lien created by the execution and delivery of the mortgage, without some allegation that there existed property upon which there was also an equitable lien and which the mortgagee was entitled to have declared and enforced, would not, as I view it, affect subsequently acquired property; and a sale under a judgment in such an action, which did not in effect direct such subsequently acquired property to be sold, and where it was not in fact sold under the judgment, would not pass to the purchaser title to the subsequently acquired property. The complaint in this foreclosure action is to enforce the lien created by the execution and delivery of the mortgage. The report of the referee directs judgment for an enforcement of the lien created by the mortgage, and the judgment follows the referee's report. It seems to me that, to include subsequently acquired property upon which it was agreed that there was to be a lien, the property thus subsequently acquired and which was to be subject to the lien of the mortgage must be specifically described and the specific property sold and conveyed. A conveyance in general terms, conveying all the property or choses in action, bills, notes, and demands of the mortgagor, would not include specific prop-

erty which had been acquired subsequent to the execution of the mortgage.

I do not think, therefore, that the conveyance by the sheriff to the purchaser under the judgment of the foreclosure of this mortgage was a transfer of this cause of action against the defendant; and the judgment should be affirmed, with costs.

PATTERSON, P. J., and CLARKE, J., concur.

SCOTT, J. (dissenting). The defendant appeals from a judgment for damages in an action for the conversion of certain bonds. There is no dispute as to the facts. On September 15, 1886, the Medina Gaslight Company was a domestic corporation, organized under the laws of this state. One Robert A. Stranahan was the secretary, and the owner of all save two shares of the entire capital stock. James Robertson was president, and the said Stranahan, Robertson, and one Dayton were directors; each of the two latter holding one share of stock, which had been made over to them by Stranahan in order to qualify them to act as directors. On said September 15, 1886, the board of directors adopted a resolution providing that the company should borrow "for the purpose of defraying the existing indebtedness, and for its other lawful purposes," the sum of $10,000, and for that purpose should issue 10 bonds, of $1,000 each, bearing 6 per cent. interest, with interest coupons attached, and payable at the expiration of 20 years. These bonds were to be secured by a mortgage to the defendant herein as trustee "upon all and singular the lands, buildings, machinery, fixtures, tools, appliances of every nature, pipes, connections, and all other property of this company, whether the same be now acquired or to be hereafter acquired, and whether real or personal, and upon all and singular its franchises and privileges." This resolution of the board of directors was recited at length in the trust mortgage which was accepted and executed by the defendant. There was also set forth at length in the mortgage the form of bond to be executed by the Medina Gaslight Company, together with a stipulation that there should be indorsed upon each bond issued a certificate of the defendant that said bond was one of the series of bonds intended to be secured by said mortgage. The mortgage was executed by the defendant trustee on September 20, 1886, and on the same day the defendant signed the trustee's certificate on the 10 bonds which had been delivered to it for that purpose. Except to sign the certificate of authenticity, it does not appear that defendant had any duty to perform with respect to said bonds. At this time Robert A. Stranahan was already personally indebted to the defendant for a loan, for which said defendant held as security stock of the Tonawanda Gas Company, and on September 21, 1886, he arranged with said defendant for a further personal loan, and gave as security the 10 bonds above referred to. The defendant knew the purposes for which the bonds were issued, and that Stranahan gave them as security for his own personal debt, and not for any purpose of the corporation, and in fact, as the defendant could have ascertained upon inquiry, Stranahan had no authority from the Medina Gaslight Company to pledge said bonds for his own personal indebted-

ness. On December 27, 1890, in settlement of an action brought against Stranahan by the German American Bank of Buffalo, wherein these bonds and the Tonawanda Gas Company stock were attached, the said bank paid to the defendant the amount then due to defendant from Stranahan, and defendant delivered the said 10 bonds to said German American Bank.

The legal effect of these transactions has already been considered by the Court of Appeals in an action brought by defendant for the foreclosure of the above described mortgage. Buffalo Loan, Trust & Safe Deposit Company v. Medina Gas & Electric Light Co., 162 N. Y. 67, 56 N. E. 505. It was therein held that the pledge of the bonds by Stranahan to defendant was an unlawful diversion, but that under the circumstances they became valid obligations of the Medina Gaslight Company in the hands of the German American Bank. After the transfer of the bonds to said bank, and at its request, the defendant trust company, as trustee of the mortgage, began an action for its foreclosure, default having been made in the payment of interest and such proceedings were had that a judgment of foreclosure and sale was entered, and on June 7, 1900, the property covered by the mortgage was sold by the sheriff to one Andrew L. Fennessy. In the meantime the Medina Gaslight Company and the Medina Electric Company were consolidated, and formed the present plaintiff, which succeeded to all the property of the Medina Gaslight Company, subject to the trust mortgage and to the liabilities and obligations of the said company. Subsequently to the foreclosure sale, and on July 10, 1900, Fennessy, the purchaser, executed an assignment to Henry Koons of the alleged cause of action sought to be enforced in this action, and on February 18, 1902, Koons executed a release to defendant of all claims or demands arising out of the cause of action stated in the complaint herein. No demand for the possession of said bonds was made by this plaintiff, or by the Medina Gaslight Company, upon either this defendant or the German American Bank, until August 26, 1895, after the commencement of the foreclosure action, when a demand was made on defendant by the plaintiff. The vital question in the case is whether or not the present cause of action was covered by the mortgage from the Medina Gaslight Company to the defendant, and passed by the sale upon the foreclosure of that mortgage to the purchaser upon the foreclosure sale. If it did not so pass, it still remains in the plaintiff, and the judgment appealed from is right. If it did so pass, the plaintiff cannot sustain its judgment.

It is strongly urged that in no event can the plaintiff recover, because, as it is said, the conversion of the bonds by the defendant took place when the defendant accepted the bonds as collateral security for the personal indebtedness of Stranahan, and consequently that the statute of limitations had run before this action was commenced. This view cannot, as we think, prevail; for we do not find any evidence of conversion at the time indicated. The defendant came rightfully into possession of the bonds, for the purpose of indorsing the certificate of authenticity upon them. The defendant's possession, then, being lawful, a demand and refusal was necessary to establish conversion, or,

in other words, to convert the rightful possession into a tortious one. Goodwin v. Wertheimer, 99 N. Y. 149, 1 N. E. 404. The mere fact that defendant agreed with Stranahan to accept the bonds as security for his past and future indebtedness does not amount to conversion, for it was unaccompanied by any act or declaration of title in derogation of that of the Medina Gaslight Company. Conversion involves something more than a mere mental process, and it may well be that, notwithstanding its agreement with Stranahan, the defendant would have surrendered the bonds if a demand had been made by the gaslight company. We are therefore of the opinion that there was no conversion of the bonds by the defendant until the delivery of the bonds to the German American Bank on December 27, 1890. By this act the defendant undoubtedly converted the bonds, and a cause of action for damages for that tortious act at once accrued in favor of the Medina Gaslight Company. Farnham v. Benedict, 107 N. Y. 159, 13 N. E. 784. In thus disposing of the bonds the defendant asserted a title to them quite inconsistent with and in derogation of the gaslight company's right to the possession of them, and completely put it out of its own power to return the bonds to the gaslight company, or to comply with a demand for their return if such a demand had been made. Under the circumstances the conversion and the right of plaintiff to recover damages, therefore, became complete upon the delivery of the bonds to the German American Bank, and no demand upon defendant was necessary to perfect this right of action. Ganley v. Troy City Nat. Bank, 98 N. Y. 487; Briggs v. Jones, 8 Misc. Rep. 261, 28 N. Y. Supp. 709, affirmed on opinion below, 119 N. Y. 577, 43 N. E. 986; Ranous v. Hughes, 19 Misc. Rep. 46, 42 N. Y. Supp. 519. The situation of affairs on December 27, 1890, was that the bonds, in consequence of their delivery to a bona fide holder for value and without notice, had become a valid obligation of the Medina Gaslight Company (Buffalo L. T. & S. T. Co. v. Medina Gaslight Company, 162 N. Y. 67, 56 N. E. 505), and there had accrued to the gaslight company in place of said bonds, and in a sense in substitution therefor, a cause of action against the defendant. It is that cause of action upon which the plaintiff now sues, and which it alleges passed to it on April 8, 1891, upon its creation consequent upon the consolidation of the Medina Gaslight Company and the Medina Electric Company.

Did that cause of action pass under the mortgage to the purchaser upon the foreclosure sale? The description of the property intended to be covered by the mortgage reads as follows:

"And also all and singular the other real estate, lands, tenements, and hereditaments of the said Medina Gaslight Company, whether the same then were or should thereafter be acquired by the said Medina Gaslight Company, and all and singular the scales, tools, machinery, fixtures, implements, and appliances of every nature and description, and all brands, stamps, trade-marks, and other articles of personal property which then were or should be thereafter acquired by the said Medina Gaslight Company, and after default should be made in the conditions of mortgage, all and singular the materials manufactured, unmanufactured, or in the process of manufacture, bills receivable, debts, demands, dues, choses in action, accounts, and all other property, real, personal, or mixed, which had been acquired or might thereafter be acquired by the said Medina Gaslight Company, with all and singular its rights, priv-

ileges, and franchises, and all and singular the estate, right, interest, property, possession, claims, and demands whatsoever, as well in equity as in law, of the said Medina Gaslight Company in or to the same, and to every part and parcel thereof, with the appurtenances."

It was by this same description that the property was sold by the sheriff and by him conveyed to the purchaser. The language of the description is very comprehensive, and is broad enough to cover not only every species of property, but also every right capable of being enforced by action, which the gaslight company might have when default should be made and foreclosure became necessary. It obviously was intended to cover all such property and property rights, and we can find no room for supposing that it was within the intention of the mortgagor to exclude from the lien and operation of the mortgage any valuable thing whatever in the nature of property, capable of passing by deed or assignment, which it might possess when the time came for the enforcement of the mortgage. Where the intention to include everything owned by a mortgagor or grantor is so clear, there is no room for the application of the rule, "noscitur a sociis." There is certainly as much reason for so construing the description in the mortgage as to cover the particular cause of action now under discussion, as there is for holding that it passed to the plaintiff under the consolidation agreement. That consolidation was effected under chapter 368 of the Laws of 1884, which in its fifth section provides for the vesting in the consolidated company of all the property of the constituent companies, describing what is to pass as follows:

"Every species of property, real, personal and mixed, and things in action thereunto belonging, * * * and all rights of property, privileges, franchises, and interests."

It cannot be questioned, and least of all by the plaintiff, that this description is broad enough to have covered the right of action which the Medina Gaslight Company had against this defendant at the time of the consolidation; and, if the statutory description was broad enough to cover that cause of action, we are quite unable to see why the description in the mortgage was not also broad enough to cover it. That the cause of action arose after the execution of the mortgage is of no consequence. The description of the property mortgaged expressly covered after-acquired property and things in action, and it must be deemed to be now well settled that a mortgage covering after-acquired property is valid, and that the lien thereof will attach to such property as it is acquired, provided that, as in the present case, no rights of creditors intervene. Central Trust Company v. Kneeland, 138 U. S. 419, 11 Sup. Ct. 357, 34 L. Ed. 1014; National Bank of Deposit v. Rogers, 166 N. Y. 390, 59 N. E. 922.

It is argued that it would be an anomaly and quite incongruous to hold that the holder of bonds secured by a mortgage should have as security for his bonds a cause of action for the conversion by his vendor of the very same bonds. Under the unusual circumstances of this case such a result is neither absurd nor incongruous. The security intended to be given for the bonds was all the property of the mortgagor, and it was contemplated that the proceeds of the bonds

would be used for the enhancement and betterment of the property that was intended to be covered by the mortgage; for it appears that the company then had no indebtedness, so that, if the intention with which the bonds were authorized had been carried out, the value of the security would presumably have been proportionately increased. That this intention was not carried out was due to the defendant's wrongful act, and thus the mortgagor found itself in possession, not of the proceeds of the bonds, but of a substitute for such proceeds in the shape of a cause of action for damages, and it is quite as reasonable that this cause of action should pass under the mortgage for the protection of the bondholder as it would have been that the betterments, if the money had been applied to betterments, or the money itself, if it had remained in the treasury unexpended, should have fallen under the lien of the mortgage and been sold upon foreclosure. We are therefore of the opinion that the cause of action against the defendant was sold on the foreclosure sale and became the property of the purchaser. That being so, it is unnecessary to consider whether he effectually sold it to Koons, or whether the latter effectually released the defendant. In any case the plaintiff has no title to the cause of action.

The judgment should be reversed, and new trial granted, with costs to appellant to abide the event.

LAUGHLIN, J. I concur with Mr. Justice SCOTT for a reversal of the judgment, but I base my vote upon the statute of limitations. The trial court has found, and the evidence sustains the finding, that the issue of the bonds was authorized by the Medina Gaslight Company for the purpose of raising money to meet its then existing obligations; that the bonds were secured by a mortgage upon all of its property, which recited the purpose for which the bonds were issued, and created the defendant trustee for the bondholders; that defendant had notice of the material facts, including notice and knowledge that the bonds in question had not been negotiated, but still belonged to the Medina Gaslight Company; and that Stranahan, in pledging the same with defendant as collateral security for his individual indebtedness, was wrongfully diverting them from the purpose intended and authorized by said company. The defendant first innocently received the bonds for the purpose of certifying the same as provided in the mortgage; and it then, in legal effect, and constructively, at least, delivered them to Stranahan for the Medina Gaslight Company, and thereupon received them back from him as if he owned them, which it knew was not the case. Its possession of the bonds for the purpose of certification was, of course, lawful; but its subsequent reception and possession of the bonds in the individual right of Stranahan and as collateral security for his individual indebtedness, which we may presume involved placing the bonds with or attaching them to his note, for which it took them as collateral security, as that of the usual course of business of banks in discounting paper, of which we may take judicial notice, was unlawful, and it is idle to say that in these circumstances it might have surrendered possession of the bonds, if demanded, for, had the defendant immediately thereafter been sued for converting the bonds, I doubt whether any

court would have held that it was entitled to have a demand made and to be given an opportunity to surrender the bonds before a cause of action for conversion would accrue to the Medina Gaslight Company. It necessarily follows from the findings that the pledging of the bonds by Stranahan constituted conversion thereof by him. Laverty v. Snethen, 68 N. Y. 522, 23 Am. Rep. 184. He being a wrongdoer and having parted with possession of the bonds, a cause of action for conversion accrued against him at once without demand; for surely he was in no more favorable position then than if he had obtained possession of the bonds innocently and had refused to deliver them on demand, in which case, under the authorities, it is clear he would be liable for conversion, without proof that damage had been sustained or that they had been transferred to an innocent holder for value, because it was in his power to so deal with the bonds that they might directly or indirectly reach the hands of a bona fide holder for value, against whom the Medina Gaslight Company would have had no defense to an action thereon.   Thayer v. Manley, 73 N. Y. 305; Farnham v. Benedict, 107 N. Y. 159, 13 N. E. 784; Warner v. Martin, 11 How. (U. S.) 224, 13 L. Ed. 667.   See, also, Kelsey v. Griswold, 6 Barb. (N. Y.) 436, and Hynes v. Patterson, 95 N. Y. 1.

If Stranahan was liable for conversion, it seems to me clear that the defendant became liable for conversion at the same time; for under the findings of the court it was aware of all the material facts, and therefore participated in the conversion by Stranahan, and was equally a wrongdoer with him.   Tallman v. Turck, 26 Barb. (N. Y.) 167.   See, also, M. E. R. Co. v. Kneeland, 120 N. Y. 134, 24 N. E. 381, 8 L. R. A. 253, 17 Am. St. Rep. 619.   Had the defendant been innocent in acquiring possession of the bonds, even though it was not a holder for value and could not enforce them against the Medina Gaslight Company, it may well be that an action for conversion could not have been maintained against it without a demand; but being a wrongdoer, and having recognized Stranahan as owner thereof, and having participated with him in exercising dominion over them, and having taken possession of and held them in hostility to the ownership of the Medina Gaslight Company with full knowledge of the facts, it became instantly liable to an action for conversion, because it aided in the conversion by Stranahan and wrongfully took and held the bonds under a claim of ownership in him, which it knew was not well founded, and it was in a position, having the actual custody of the bonds, to dispose of them in the enforcement of its pretended rights as pledgee, as it subsequently did, to an innocent holder for value to whom the Medina Gaslight Company would be liable therefor.   Buffalo Loan, T. & S. D. Co., v. Medina Gas & E. L. Co., 162 N. Y. 67, 56 N. E. 505; Hovey v. Bromley, 85 Hun, 540, 33 N. Y. Supp. 400; Thayer v. Manley, supra; M. E. R. Co. v. Kneeland, supra; Tallman v. Turck, supra; Amer. & Eng. Ency. of Law, vol. 28, p. 684; Laverty v. Snethen, supra; Pease v. Smith, 61 N. Y. 477; Boyce v. Brockaway, 31 N. Y. 490; Smith v. Smalley, 19 App. Div. 519, 46 N. Y. Supp. 277; Industrial & General Trust Co. v. Todd, 180 N. Y. 233, 73 N. E. 7; Encyclopedia of Pleading & Practice, vol. 21, p. 1050;

Osborne Mfg. Co. v. Piano Mfg. Co., 51 Neb. 502, 70 N. W. 1124; Underhill v. Reinor, 2 Hilton (N. Y.) 319.

The defendant, therefore, became liable for conversion at the time it received the bonds from Stranahan, September 21, 1886. This action was not commenced until September 14, 1895, or nearly nine years thereafter. The time within which an action for conversion must be brought is limited to the period of six years after the cause of action accrued (Code of Civil Procedure, § 382), and this period is not extended by the fact that the owner may not have discovered the conversion at the time it takes place (Ganley v. Troy Nat. Bank, 98 N. Y. 487; Burt v. Meyers, 37 Hun, 277; Kelsey v. Griswold, supra; Allen v. Mille, 17 Wend. [N. Y.] 202).

I am of opinion, therefore, that the cause of action was barred by the statute of limitations, which was duly pleaded, and I concur with Mr. Justice SCOTT for a reversal of the judgment.